## L. D. LATHAM *et al.* V. A. J. BROWN.

1. NEGLIGENCE—*Damages—Separate Trial.* In an action to recover damages occasioned by negligently setting out a fire, in which a partnership or an association of persons who were engaged in operating a railroad in connection with a railroad company were made defendants jointly with the railroad company, it is not prejudicial error, nor an abuse of discretion, for the trial court to refuse a separate trial, under § 268 of the code, to such persons composing said partnership or association, for the reason that a different rule of evidence applies to them than to the railroad company. When the evidence establishing the origin of the fire and the culpable negligence of the parties in starting it is clear, convincing, and undisputed, and when the defendants below make no effort to explain or dispute it, there being no conflict in the evidence, there is no room for the play of different rules as to the burden of proof.

2. OPINION EVIDENCE—*Competent Witness.* Farmers who have planted and cultivated orchards are competent witnesses to prove the value of fruit-trees in the orchard of a neighbor that have been destroyed by fire, or to express opinions about the value of fruit-trees of a certain kind, age, and condition, although they may not have seen or examined these particular trees.

### *Error from Butler District Court.*

ACTION by *Brown* against the *Kansas City & Southwestern Railroad Company* and *L. D. Latham & Co.*, to recover for damages caused by fire. Judgment for the plaintiff, at the March term, 1889. Defendants *Latham & Co.* bring the case to this court. The opinion states the facts.

*Jos. O'Hare*, for plaintiffs in error.

*George Gardner*, for defendant in error.

Opinion by SIMPSON, C.: This was an action against the Kansas City & Southwestern Railroad Company, and other parties composing the firm of L. D. Latham & Co., commenced in Cowley county, and sent to Butler county, to recover damages to land lying in both counties, by fire caused by the operation of a railroad by these parties. The defend-

ant in error was awarded $842.40 damages, $200 attorney's
fees, and his costs. The case is here for review, all proper
exceptions being saved. The record shows that all the evi-
dence was incorporated, without reference to the certificate of
the trial judge.

I. The first error complained of is the refusal of the trial
court to allow L. D. Latham & Co. a separate trial, and § 268
of the code is cited to sustain this demand. That section
provides that "a separate trial between the plaintiff and any
or all of several defendants may be allowed by the court
whenever justice will thereby be promoted." The only rea-
sons given by counsel for plaintiffs in error why the trial
court should have exercised the discretion granted by the stat-
ute are, first, that there was no common interest between
Latham & Co. and the railroad company ; and, second, that
the same rule of law does not apply to Latham & Co. as does
to the railroad company.

As a matter of fact and as a matter of law, the first is not
tenable in any aspect of the case, as viewed from this record,
because the finding of the jury is that L. D. Latham, James
Hill, James N. Young, Henry E. Asp and Ed. P. Greer and
the Kansas City & Southwestern Railroad Company were
operating the train. The second is founded on the operation
of chapter 155 of the Laws of 1885, now ¶ 1321, General
Statutes of 1889, that provides that, in all actions against any
railroad company organized or doing business in this state for
damages by fire caused by the operating of said railroad, proof
that the fire was caused by the operating of said railroad shall
be *prima facie* evidence of negligence on the part of said rail-
road company. While it is admitted that this applies in this
case to the Kansas City & Southwestern Railroad Company,
its application to Latham & Co. is denied, they being neither
a railroad company nor a *de facto* railroad company. The case
of *Beeson v. Busenbark*, 44 Kas. 669, is cited in behalf of this
contention, and it is urged that, by the ruling of the court
denying to Latham and others a separate trial, they were

greatly prejudiced, by having the same burden cast on them as on the railroad company, and they were compelled to disprove negligence when the plaintiff below ought to have been required to affirmatively establish their negligence.

Viewing this question from the stand-point of the evidence, we doubt whether the refusal to allow a separate trial had any prejudicial effect, even if it was error; for we must admit that we have seldom, if ever, read a record that shows so much culpable negligence in the operation of trains, so far as fire is concerned, as this one presents. The right-of-way, and even some of the spaces between the ties, was covered with tall dry grass and weeds and other combustible matter. Repeated instances of engines throwing fire are established. Parties stood very near the cars as the train passed, and one witness testified that he could have stepped off the ties into the fire started by the engine. This same engine started the fire in three places some distance apart. In a word, the evidence establishing the time, place and manner of the fire was strong, consistent, and uncontradicted, the defendants below not contesting this part of the case, except by cross-examination. This evidence was so strong, so positive, and so clearly convincing, that there could be no reasonable doubt as to the cause of the fire and the circumstances of its origin, and hence there was no room for the play of separate rules as to the burden of proof; there was no burden; there was no conflict; the defendants below offered no evidence as to the cause of the fire or the circumstances under which it originated. The section vests a discretionary power with the trial court, and, under any circumstances, the record would have to show that the discretion had been abused before we could reverse.

II. The land of the defendant in error was about one-fourth of a mile away from the railroad track. It consisted of 240 acres, partly in Cowley and partly in Butler county. The fire burned, on the farm of the plaintiff below, 140 acres of grass; one house; one crib; 20 tons of hay; 371 forest trees; a few fence posts; 161 fruit trees, about four years old,

consisting of peach, cherry and pear trees; and other things were destroyed. The jury returned the following special findings:

"1. If the jury find that there was negligence on the part of the defendants, or any of them, state who the negligent party or parties were, and of what such negligence consisted. A. Kansas City & Southwestern Railroad Company, L. D. Latham, James Hill, James N. Young, Henry E. Asp, Ed. P. Greer; in allowing right-of-way to grow up with grass and weeds and combustible matter; and engines being in bad repair.

"2. If the jury find that plaintiff's damage was caused from a fire set out by and from railroad train, state how said fire escaped or was communicated. A. From coal dropping from fire-box and sparks from smoke-stack.

"3. If you find that said fire was set out by a railroad train, who was operating said train? A. By Kansas City & Southwestern Railroad Company, and L. D. Latham, James Hill, James N. Young, Henry E. Asp, Ed. P. Greer.

"4. What was the condition of the surface of the land adjacent to plaintiff's orchard, with reference to the existence of dry grass or other combustible material being thereon, at the time this fire is alleged to have occurred? A. Fire-guards sufficient for any ordinary occasion or precaution.

"5. Show what was the condition of the surface of the land adjacent to the house that was burnt, with reference to the existence of dry grass or other combustible material being thereon, at the time the said fire occurred. A. Prairie land much tramped about the house and some breaking.

"6. Show what was the condition of the surface of the land adjacent to the cottonwood grove and timber that is alleged to have been burned, with reference to the existence of dry grass or other combustible material being thereon, at the time the fire is alleged to have occurred. A. Pastured close, and fire-guards and some crab-grass.

"7. What was the general condition of the surface of the land, with reference to the existence of dry grass or other combustible material being thereon, between the point where the fire is alleged to have started and plaintiff's premises, at the time the fire occurred? A. Prairie from the point of the railroad from which fire started to the premises mentioned, and fire-guard and country road between.

"8. What was the condition of plaintiff's orchard, with

13—48. KAS.

reference to the existence of dry grass or other combustible material being thereon, at the time the fire is alleged to have occurred? A. Some crab-grass thereon.

"9. What was the condition of plaintiff's cottonwood grove and timber at the time said fire is alleged to have occurred, with reference to the existence of dry grass or other combustible material being thereon? A. In as good condition as is usual with farmers.

"10. What precaution, if any, had plaintiff taken to protect his orchard from prairie fires at the time this fire is alleged to have occurred? If he had made any fire-guard, show its character and extent. A. Fire-guards from 8 to 16 feet in width on the north and west, and some plowing.

"11. What precaution had plaintiff taken, if any, to protect his cottonwood grove and timber from prairie fires, at the time this fire is alleged to have occurred? A. All necessary precaution that a careful farmer would take.

"12. What precaution, if any, had plaintiff taken to protect the house that is alleged to have been burned from prairie fires, at the time said fire occurred? A. He took every necessary precaution as any farmer would deem requisite.

"13. How far was it from the point where the fire is alleged to have started to plaintiff's premises? A. About 80 rods.

"14. If the jury find in favor of the plaintiff, against whom of the defendants do you find? A. Kansas City & Southwestern Railroad Company and L. D. Latham, James Hill, James N. Young, Henry E. Asp, Ed. P. Greer.

"15. If the jury find for the plaintiff, how much do you find for the apple trees? A. $75. How much for peach trees? A. $194. How much for cherry trees? A. $86. How much for pear trees? A. $25. How much for cotton-wood trees? A. $100. How much for timber? A. $11.30. How much for the house? A. $50. How much for all other damages? A. $145. Interest, $158.

"16. Did plaintiff not know that his premises being covered with weeds, dry grass, and other combustible material, that fire was likely to escape from engines on said line of railroad and spread and burn his premises? A. No proof of such being covered with more than grass on prairie part.

"17. Was the plaintiff guilty of negligence in not properly protecting his property from damage by fire? A. No."

Complaint is made of the action of the jury in their an-

swers to special questions Nos. 5, 6, 7, 9, 11 and 12, especially, as well as some murmurs as to the others; but while in some instances the answers are somewhat confused, and in two instances not direct, yet they compare favorably with answers generally made. The acute and technical lawyer often expects too much from a jury in this regard. The answers in this case are consistent with one another, supported to some extent by the evidence, and do not evince a disposition to dodge, evade or suppress the truth. The instructions are complained of, and we think justly so in one respect, as the trial court did not distinctly state and make plain to the jury the difference in the degree of evidence necessary for a recovery against the railroad company and the firm of Latham & Co.; but, as we have stated before, all these criticisms avail nothing in the presence of the most material and controlling fact, that the proof of culpable negligence on the part of those operating the railroad was so overwhelming as to exclude any thought of prejudicial error in this branch of the case.

III. The jury found expressly in the seventeenth special finding that the defendant in error was not guilty of negligence in not properly protecting his property from fire. There is, in our judgment, abundant evidence in the record to sustain that finding, and we could not, even if we desired to do so, ignore the finding and the facts upon which it is based. The most serious complaint is that made about the character of the evidence that was allowed to go to the jury in regard to the value of the property burned, and especially as to the value of the fruit and other trees. The substantial contention of counsel is, that none but experts can testify to the value of trees, as the question embraces so many considerations, as to size, character, condition, variety, state of cultivation, health, thrift, soil, etc. The same thing can be said about grass, or growing crops, and much of it can be said about a steer or cow, and all and more about land. This court has in all cases adopted the rule, that when disputes arise in all the common and ordinary affairs of life, with which a large class of persons, such as farmers, have daily

concern and continuous experience, they are competent witnesses to testify about the things that are the subject of their labor and care. The planting out and care of an orchard is one of the usual incidents of farm life. The man who labors and cares for his fruit or shade or ornamental trees for years becomes possessed of a practical knowledge about trees that qualifies him to express an opinion as to their value. An expert nurseryman may be better, but the man who has successfully planted, cultivated and cared for an orchard is good enough. These witnesses were well enough qualified under this rule to render their evidence competent. There was some conflict about the value of trees between the farmer who had grown orchards and the nurseryman that sells sticks, but the jury wisely determined the issue in favor of practical knowledge and successful cultivation, and the trial court approved, and we cheerfully acquiesce in the finding.

Other questions discussed by counsel for plaintiffs in error are not believed to be material, in view of the rule that there is some evidence to sustain the findings and judgment. Of course the judgment must be modified so as to make the attorneys' fees chargeable to the railroad company alone, and not to the other defendants. With this modification, we recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.