No. 19,361.

KENNETH HEALER, a Minor, etc., *Appellant*, v. HENRY INKMAN and ANTON R. HARTWIG, *Appellees*.

SYLLABUS BY THE COURT.

1. QUALIFICATION OF JURORS—*To be Determined by Trial Court.* The qualification of a juror when challenged for cause is to be determined by the trial court, and ordinarily such determination is conclusive.

2. JURORS — *Codefendants — Unrelated Defenses — Number of Challenges.* Where two codefendants each have unrelated and independent defenses, presenting different issues, it is not error to allow each of them three peremptory challenges.

3. TRIAL—*Proper Hypothetical Questions—Time Required to Do Certain Work.* Hypothetical questions propounded to expert witnesses tending to show the length of time which ordinarily would be required to do a certain piece of work and to show the proper manner of doing it are admissible in evidence where such evidence would aid the jury in finding the ultimate facts necessary to their verdict.

4. PERSONAL INJURIES—*Child—Falling Wall—Proper Instruction.* In an action for damages to a child by the fall of a

part of the wall of a one-story frame house which was being dismantled the court instructed the jury as follows:

"The jury are instructed that any person who goes upon private property without invitation is considered under the law to be a trespasser, and the owner of private premises owes no duty to trespassers except not to wantonly or wilfully injure them, and he is under no obligation to keep his premises in a safe condition for the benefit of persons who come thereon without license or invitation, even though the trespasser be a child. In this case it was not the duty of the defendant Hartwig to expect or foresee that the plaintiff would enter upon his premises and put himself in a place of danger thereon; and if you find from the evidence that the plaintiff Kenneth Healer did go upon the defendant Hartwig's premises and while on the foundation wall thereof, or on any part of Hartwig's premises, he was injured by the falling of timbers upon him, then the defendant Hartwig is not liable in this action and your verdict should be returned accordingly."

*Held,* not error.

5. SAME—*Instruction—Relating to Owner and Independent Contractor.* Instructions relating to liability of owner and independent contractor in an action for damages through negligence in the performance of the work contracted to be done examined, and found to conform to the law as defined in *Laffery v. Gypsum Co.,* 83 Kan. 349, 111 Pac. 498, and *Pottorff v. Mining Co.,* 86 Kan. 774, 122 Pac. 120.

6. SAME—*Immaterial Instructions.* It is immaterial what instructions are given on one phase of a lawsuit, when it is conceded that on another phase of the case, covered by other instructions, the verdict was the only one which could be returned.

7. SAME—*Expert Evidence—When Inadmissible.* The rule followed that expert testimony is inadmissible to prove the ultimate facts which the jury itself must determine.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed March 6, 1915. Affirmed.

*William W. Hooper,* of Leavenworth, for the appellant.

*A. E. Dempsey,* and *Floyd E. Harper,* both of Leavenworth, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This case has been in this court before. (*Healer v. Inkman,* 89 Kan. 398, 131 Pac. 611.) It is an action for damages to Henry Healer, a boy three and a half years old, caused by the falling of the wall of a one-story frame building which was being torn down on the premises of Anton R. Hartwig, the wall falling over on the adjoining lot. The contract for demolishing the building had been let to Henry Inkman, a carpenter and contractor, and Inkman employed one Chris Diehm to do the work. The wall was not exactly on the division line of the Hartwig lot, but stood about a foot inside Hartwig's lot. Appellant charged both Inkman and Hartwig with negligence; that Chris Diehm, who did the work, was old, deaf and incompetent; that the wall which fell was ten or twelve feet high and twenty or thirty feet long, made of drop siding and boards nailed to 2 x 4 scantling and of sufficient size and weight to crush or injure any person upon whom it might fall; that it fell on account of the careless, willful and wanton manner in which the work of taking down the wall was being done. His petition continues:

"Plaintiff further alleges that on or about said 7th day of May, 1910, while said plaintiff was on his said premises and playing on, around and about thereof, and next to the wall as aforesaid, it, without warning to him and on account of the careless way in which it was being torn down, and on account of the incompetency of the man whom the said defendants had placed in charge of said work, fell to the west and over and upon the premises on which said plaintiff was living and upon said plaintiff, crushing and bruising him in such a manner so as to permanently injure him for life," etc.

The defendant Inkman answered:

"That if said plaintiff was injured by the falling of said old building, or any part thereof, which this answering defendant denies, such injuries were caused by his own negligence, in that, at the time of said injuries, if any, he was without any right upon the premises of

the defendant Anton R. Hartwig, where he then was, with the knowledge and consent of his said grandmother and next friend, and was in a place of danger, where he had no business to be, and that such danger was well known to the plaintiff and to his grandmother and next friend, and that this answering defendant had no knowledge of the presence of said plaintiff upon the premises, and is in no way responsible for the injuries he sustained, if any, and that such injuries so sustained by the plaintiff were the result of his own negligence, in deliberately going upon the premises of the defendant Anton R. Hartwig and into a place. of danger, with the knowledge, consent, directions and threats of his said grandmother and next friend."

Part of Hartwig's answer reads:

"This answering defendant further avers that prior to May 7, 1910, he desired to build on his said premises, and entered into a verbal contract with an independent contractor to erect said building and to remove from this defendant's said premises the old building then standing thereon; that all of the work of furnishing the materials for and constructing said new building, and of removing the old building from defendant's premises, was included in the one contract, and this answering defendant had or retained no direction or control as to the plan, manner or method of removing said old building, and at no time assumed any direction or control thereof, but that said old building was torn down and removed by said independent contractor according to his own plans and under his own direction, by his own workmen, in the usual and ordinary way."

From a judgment in favor of defendants appellant assigns error:

1. Overruling peremptory challenge of Juror Meyers.

2. Allowing Inkman and Hartwig three peremptory challenges each.

3. Admission of expert testimony.

4. Instructions given at request of defendants.

5. Refusal of instructions requested by plaintiff.

6. The exclusion of testimony offered by plaintiff.

Examining these in their order:

1. Meyers was challenged on his *voir dire* because one of the attorneys for defendants was attorney for

Meyers' employer, a transfer company, which company did some hauling for Hartwig. The juror testified that the hauling "did n't amount to much," and that he would not let that interfere with his duty.

We apprehend that counsel intended to base error, not on the overruling of a peremptory challenge of Meyers, but upon a challenge for cause. (24 Cyc. 351.) The common-law niceties of challenge for principal cause and challenge to the favor have been superseded by the provisions of the code (Civ. Code, §§ 282, 283), and in this state a wide discretion is vested in the trial court to determine the qualification of a juror. The code provides that the validity of such challenge shall be determined by the court; and, unless that discretion is abused, such determination is conclusive. (*Moore v. Cass,* 10 Kan. 288; *M. K. & T. Rly. Co. v. Munkers,* 11 Kan. 223; *Swift v. Platte,* 68 Kan. 10, 74 Pac. 635.)

2. It does not appear how appellant could have been prejudiced by allowing three peremptory challenges to each of the defendants. True, appellant sought to hold them as joint wrongdoers, but appellees pleaded unrelated and independent defenses. In some respects they were not united in interest as contemplated by the civil code (§ 283). In 24 Cyc. 356 it is said:

"The rule, however, is to be applied according to the reasons upon which it is based and limited to cases in which the positions of the several parties upon the same side are similar, so while the fact that several defendants who set up a common defense plead separately does not entitle them to any additional peremptory challenges, the rule is otherwise where they set up separate and distinct defenses presenting different issues, or where the parties on one side, although having a common cause against the other, have conflicting rights among themselves which the verdict of the jury will affect."

3. Certain hypothetical questions were asked of experienced carpenters and builders to develop the fact as to how long it should ordinarily take a man of ordinary skill and industry to do a certain amount of work

and the ordinary manner of doing work like, that in question. Appellant contends that this was not in issue. If not, we think it would be immaterial and not prejudicial. (*City of Topeka v. Sherwood,* 39 Kan. 690, 693, 18 Pac. 933; *Barker v. Railway Co.,* 89 Kan. 573, 575, 132 Pac. 156.) Moreover, it seems proper, in view of the issue tendered by appellant, that the work was performed by Diehm, "an old, deaf, incompetent man," and that the work was negligently done. Surely the testimony of men experienced in that kind of work was competent on that issue. Ordinary jurymen would hardly be expected to determine that question without such expert testimony. On issues of that character, it has always been the practice in Kansas to admit such evidence. In *N. M. R. R. Co. v. Akers,* 4 Kan. 453, Mr. Chief Justice Kingman said:

"So a mason may be asked how long it would take to dry the walls of a house, so as to render it fit for a habitation. (*Smith v. Gugerty,* 4 Barb. 614, 615.) So also may experienced gardeners give opinions as to the amount of damages done to plants, trees and shrubs by the smoke, heat and gas proceeding from the defendant's brick kiln. (*Vandine v. Burpee and another,* 54 Mass. 288.)" (p. 473.)

To the same effect are: *Erastus Tefft v. Hardin H. Wilcox,* 6 Kan. 46; *Latham v. Brown,* 48 Kan. 190, 29 Pac. 400; *Railway Co. v. Merrill,* 61 Kan. 671, 60 Pac. 819; *Currey v. Robinson,* 92 Kan. 117, 139 Pac. 1023; *Root v. Packing Co.,* ante, p. 339.

The authorities cited by appellant merely state the familiar doctrine that questions propounded to experts tending to produce the answer which the jury and not the witnesses must give are inadmissible. Here one of of the questions objected to was:

"Q. Now, where the evidence shows that a party tearing down a building removed the two rear rooms, then started to remove the shingles from the front room—13 by 14 room—and removed the sheeting and rafters, and then the studding, and later started to re-

move the flooring, I will get you to state if that is the usual and ordinary way of tearing a building down?"

This was not the ultimate fact which the jury had to find. The ultimate fact, or one of them, was for the jury to say whether the defendants, or either of them, was negligent in tearing down this building and whether their negligence occasioned the appellant's injuries, and the question objected to was pertinent to that issue.

4. The substance of three instructions complained of was that if the appellant was on the premises of Hartwig, without invitation express or implied, he was a trespasser; and if while on the foundation wall, or on any part of Hartwig's premises, at the time he received his injuries, he could not recover. This is the only serious question in this lawsuit. The evidence showed that Hartwig's wall was a foot inside of his line; and that foot of ground on the outside, being contiguous to the premises of appellant's grandmother, with whom he resided, would naturally be used by the child as part of those premises. Counsel for appellant contends that the child was on this foot of ground when he was injured by the falling wall, and leaves us to infer, without argument, that the ordinary rule regarding nonliability to trespassers should not apply, and that to all practical intent the foot of Hartwig's ground contiguous to the Healer lot was part of the Healer premises. On the other hand, counsel for appellees contend that this is a mere afterthought, and in support of that contention point out that no instruction was asked by appellant covering that feature of the case. Appellees also urge that there was no evidence to show that the child was on this particular foot of ground when injured. The testimony of the grandmother does fairly show that the child was on that foot of ground, although it is difficult to harmonize that fact with the rest of her testimony "that the wall fell in her yard, broke a shutter; when it struck her house it bounced backwards, crush-

ing Kenneth on the wall." If Kenneth was standing on the foot of ground contiguous to her premises when the wall fell the child would have been under it, not "crushed on the wall." Indeed, the witness Jordan, who testified for appellant, said the side of the building was in Healer's yard and "Kenneth under it." Another witness testified that the child was on top of the wall and his grandmother picked up a stick "to scare him" and he "ran along the west wall (inside) to the south end with the intention of jumping off in his own yard, but before he got there this part of the house fell over and caught his head in a joist in a nail." The evidence also showed blood all over the wall on the inside. The witness who picked up the child testified:

"This [foundation] wall is two feet higher than the ground, and the baby is [caught] beyond the second joist below. There was eight penny nail, cut nail, on the first floor came back this way and catches him here (indicating). I came right over here and took a second ceiling joist and raised them up and took the baby out and gave him to her [Mrs. Healer]. *He was right on top of the wall inside of the house.* I stood between the joists of the floor, raised them up and took the baby out and gave it to her."

The testimony of another witness reads:

"Q. Now, I will ask you to state what happened in that matter? A. Why, I seen Mr. Diehm picking the boy up on the northwest corner off of the wall.

"Q. What was the first thing you heard that attracted your attention? A. Why, I heard a crash and Mrs. Healer hollered, 'My baby, my baby,' so I looked out the window and saw Mr. Diehm pick the boy off the wall on the northeast corner.

"Q. Tell the jury where the little boy was with reference to the foundation wall? A. He was up on top of the foundation, yes. I come out through the kitchen in the back yard and saw Mr. Diehm step down in Mrs. Healer's yard and give him to Mrs. Healer, and she took him and carried him in the house."

These excerpts of testimony indicate that neither party attached any particular significance to the fact

that one foot of Hartwig's ground was outside the wall, nor was the case tried on the theory that this foot of Hartwig's ground should be considered as part of Healer's premises.

The petition alleges that the child was injured on his premises (that is, his grandmother's) and while playing on, around and about thereof, and next to the wall, etc. The instructions complained of told the jury that if the appellant was on the premises of Hartwig, or any part thereof, without invitation, etc., appellees would not be liable. Unless we were prepared to say that the wall or building being dismantled was an attractive nuisance like a railroad turntable, the appellees were not liable if the child was a trespasser at the time he was injured. (*Mayfield Water & Light Co. v. Webb's Admr.,* 129 Ky. 395, 111 S. W. 712, 130 Am. St. Rep. 469; *Peninsular Trust Co. v. Grand Rapids,* 131 Mich. 571, 92 N. W. 38; *Gillespie v. McGowan,* 100 Pa. St. 144; *Dobbins v. M. K. & T. Ry. Co.,* 91 Tex. 60, 41 S. W. 62, 66 Am. St. Rep. 856; *Ritz v. City of Wheeling,* 45 W. Va. 262, 31 S. E. 993, 43 L. R. A. 148; *Uthermohlen v. Bogg's Run Co.,* 50 W. Va. 457, 40 S. E. 410, 55 L. R. A. 911.)

Surely if counsel for appellant considered that the case turned upon the question as to whether his client was or was not a trespasser, and that question depended upon whether Hartwig's foot of ground outside the wall should be considered part of Healer's premises, he would have asked for an instruction on that point. Prudence would have suggested, also, that he ask for a finding of fact as to whether his client was on that particular foot of ground when injured.

On full consideration we must hold that these instructions were unobjectionable and fairly covered the case as tried. (*Douglass v. Geiler,* 32 Kan. 499, 4 Pac. 1039; *Judy v. Buck,* 72 Kan. 106, 82 Pac. 1104.)

5. The next assignment of error is based upon the court's refusal to give instructions which under vari-

ous phases of the case would fix responsibility upon Inkman and not Hartwig, and in what state of the facts both would be liable, and also under what circumstances Hartwig would be liable. So far as relevant, these instructions asked were sufficiently given. (*Laffery v. Gypsum Co.*, 83 Kan. 349, 111 Pac. 498; *Pottorff v. Mining Co.*, 86 Kan. 774, 122 Pac. 120.)

There is a controversy between counsel regarding the instructions, and a discrepancy as to them is clearly marked in their respective abstracts; but both the appellant's abstract and that of appellees show that the entire subject was fully and fairly covered, whichever set of instructions was given. A certified copy of the instructions asked by appellant and refused is before us, but they do not help solve this difficulty. We conclude that all the instructions set out as given in both abstracts were in fact given. Either those set forth by appellant or those set forth by appellees would have been sufficient, nor was it error to give them all. In any event, there was no finding of negligence, and, indeed, counsel for appellant concede that the jury could not fail to find for appellees under the instructions given relating to the child being a trespasser. That concession makes the propriety of the other instructions a question of no importance.

6. The last error complained of relates to the exclusion of the testimony of William Healer, a man who had experience in tearing down buildings. Its principal features were:

"Q. You saw that wall standing there? A. Yes, sir.

"Q. From your experience I will get you to state whether or not that was left in a safe condition? (Objection sustained.)

"Q. I will ask you this question then. You saw that wall as it stood there, I will get you to state to the jury in order to make it safe how should it have been fixed? (Objection sustained.)

. . . . . . . . . . . . . . .

"Q. I will get you to state whether or not in order to make it reasonably safe it should have been braced?" (Objection sustained.)

This was not error. Counsel argue that if expert testimony was admissible for appellees it should likewise be admissible for appellant. There is no gainsaying the justice of that proposition, but appellees' questions related to general facts within their experience and called for opinions based thereon. They were not directed to the ultimate facts of this particular case. Appellant's questions were quite the contrary and were objectionable under all the rules of evidence. (*K. P. Rly. Co. v. Peavey*, 29 Kan. 169; *Insley v. Shire*, 54 Kan. 793, 39 Pac. 713; *Erb v. Popritz*, 59 Kan. 264, 270, 52 Pac. 871; *Telephone Co. v. Vandervort*, 67 Kan. 269, 72 Pac. 771; *Oil Co. v. Drilling Co.*, 80 Kan. 261, 101 Pac. 1072.)

The judgment is affirmed.