No. 26,356.

JOHN ROMAN, *Appellee*, v. ST. LOUIS - SAN FRANCISCO RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. RAILROADS—*Injuries to Animals on Tracks—Defective Gate at Crossing—Evidence*. In an action for death and injury to plaintiff's herd of milch cows, the evidence examined and held sufficient to show that the private crossing gate maintained by the defendant railway company as part of its right-of-way fence was not up to the minimum standard prescribed by the statute for a lawful fence.

2. SAME—*Defective Gate at Crossing—Proximate Cause*. Where a gate in a railway right-of-way fence at a private farm crossing is not up to the standard required by the statute, and plaintiff's cattle break down the gate and get out on the right of way and are killed or maimed by defendant's railway trains, the plaintiff is relieved of the burden of showing that the proximate cause of the damages sustained in the loss of his cattle was caused by the negligence of the railway company.

3. SAME—*Gate at Crossing—Admissibility of Evidence as to Security*. No prejudicial error was committed in permitting the introduction of testimony to show that a gate, the bottom of which was twenty-six inches from the ground, was not as secure as one no higher than the statutory maximum of twenty-four inches from the ground.

4. SAME—*Evidence—Habits of Milch Cows*. No prejudicial error occurred in permitting qualified witnesses to testify to the habits of milch cows in lying down and getting up beside a pasture gate through which they were daily accustomed to pass.

5. SAME—*Instructions*. Instructions examined and held to contain nothing to the prejudice of defendant.

Appeal and Error, 4 C. J. pp. 853 n. 59, 918 n. 42; 2 R. C. L. 194. Negligence, 29 Cyc. p. 436 n. 50. Railroads, 33 Cyc. pp. 1207 n. 73, 1282 n. 91, 1289 n. 73, 1296 n. 55, 1308 n. 66, 1323 n. 26; 49 L. R. A. 633; L. R. A. 1915E, 944; 1 R. C. L. 1197; 2 R. C. L. 194.

6. APPEAL AND ERROR—*Review—Weight of Evidence.* A verdict and judgment, having the support of substantial and competent evidence which the jury chose to believe, cannot be disturbed on appeal.

7. RAILROADS—*Actions for Injuries to Animals—Allowance of Attorney's Fee.* In an action against a railway company on its statutory liability for killing and injuring cattle which got upon the railway track through a gate which was a part of a right-of-way fence, which gate did not come up to the minimum requirement of the statute defining a lawful fence, the allowance of a reasonable attorney's fee is authorized by law and was not improperly included in the judgment.

Appeal from Miami district court; JABEZ O. RANKIN, judge. Opinion filed April 10, 1926. Affirmed.

*E. J. Sheldon,* of Paola, *E. T. Miller,* of St. Louis, Mo., *Henry S. Conrad, L. E. Durham* and *Hale Houts,* all of Kansas City, Mo., for the appellant.

*Alpheus Lane* and *Karl V. Shawver,* both of Paola, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: John Roman, a Miami county farmer, brought this action against the defendant railway company to recover damages for the killing of a dozen of his dairy cattle and injuring two others.

Roman's quarter-section farm is located about two miles southeast of Paola. Defendant's railway crosses his farm north and south so that about twelve acres, including the farm house, outbuildings and corrals, are located west of the railway, and the pasture and other fields lie east of it. There is a private farm crossing connecting the two parts of the farm, and the plaintiff's herd of milch cows was driven daily across the railway tracks to be milked and returned to the pasture. On the east side of the railway, at the point of this private crossing, the defendant maintained a gate as part of its right-of-way fence; and plaintiff grounded his action on the inadequate character of this gate, through which his cows got out upon the right of way on the night of July 16, 1923, and were struck and killed or maimed by defendant's railway trains.

Plaintiff's written demands for compensation were investigated and denied by defendant, and this action followed. A verdict for $1,400 as damages and $300 as attorney's fee was returned by the jury and judgment was entered thereon for plaintiff. Defendant's motion for a new trial was overruled; hence this appeal.

It is first argued that there was no evidence of defendant's negligence. There was evidence that the gate was not up to the standard required by the statute which defines a lawful fence. Plaintiff had alleged that the gate was of too light material, that it rested on hinges set in the post at the south. end of the gate in such a manner as to be easily lifted and detached from the hinge post, that the gate was several inches too short to lap against the latch post at its north or swinging end, and that the north end of the gate was hung too high, some twenty-six inches from the ground, and was insufficiently secured to the north post by a single hook which snapped into a wire loop which went around the post.

On the morning of July 17, 1923, the gate, which was made of pipe tubing and wire, was found to be broken down and open. The latch at the north or swinging end of the gate was broken, and the gate was detached at the south end from the lower hinge of the gate-post. On the railway right of way near by ten of plaintiff's cows were found dead, two so badly injured that they soon afterwards died, and two others badly maimed. There was no dispute about the killing and maiming being caused by defendant's trains. Plaintiff's evidence tended to show that sometime prior to July 16 plaintiff had called defendant's attention to the. condition of the gate; that he wanted defendant to remedy the gate; that he wanted it to lap against the post; that defendant promised that it would remedy the condition; that at different times plaintiff talked with defendant's section foreman about the gate, and suggested that it could be put on the west side of the right of way where a strong gate was not required, and that a heavier gate should be placed at the opening into the pasture on the east side of the right of way, and that the section foreman said that change should be made. Plaintiff's evidence also tended to show that he spoke to defendant's roadmaster about having the fence fixed with a stronger gate; that the roadmaster agreed and asked if plaintiff would do the work, as the defendant was short of help, and that plaintiff said he would, and started to dig the holes, but stopped because no material was brought. It was also shown in plaintiff's behalf that dairy cows are inclined to lie down close to a pasture gate, and that when they lie down they swing their rear quarters out to one side. The significance of the testimony was to develop plaintiff's theory of how the gate happened to be broken from its fastening and lifted off one of its hinges. The bottom of the gate being twenty-six inches

above the ground, a cow's rear quarters might readily have been swung under the gate, and when the cow started to get up the breaking of the gate and its being lifted off one of its hinges followed, with the consequence that all the cows got out on the right of way.

Defendant's evidence tended to show that no such conversations touching the insufficiency of the gate ever occurred between plaintiff and its section foreman or roadmaster, and tended to show that the night of July 16 was a stormy one, which may have stampeded the cows and caused them to burst the gate. Defendant's evidence also tended to traverse most of the other facts testified to in plaintiff's behalf.

It hardly needs to be said that a gate at a private farm crossing over a railway track constitutes part of the right-of-way fence, and it should be as secure as any other part of the fence. The bottom wire of a fence must not be more than twenty-four inches above the ground (R. S. 29-105), and of course the bottom of the gate should be no higher, and it was *ipso facto* a form of negligence for a railway company to breach its statutory duty to maintain such a fence along its right of way. (R. S. 66-295 *et seq.;* R. S. 66-308 *et seq.*) It was for the jury to determine the probative significance to be given to these evidential facts and circumstances, and defendant's contention that there was no evidence of negligence —of statutory breach of duty—cannot be sustained.

The same ruling must be made to defendant's second contention— that assuming defendant's negligence or breach of duty, there was no evidence that such negligence was the proximate cause of the cattle getting out on the right of way, and *Railroad Co. v. Aderhold,* 58 Kan. 293, 49 Pac. 83, and *Beeler v. Railway Co.,* 107 Kan. 522, 192 Pac. 741, are cited to support the proposition that conjecture, speculation or mere guesses will not supply the want of evidence to establish the proximate cause of the breaking of the gate. But here it cannot be admitted that the cause of the gate being broken from its fastening and becoming unhinged is mere conjecture. In the analogous case of *Railway Co. v. Paxton,* 75 Kan. 197, 88 Pac. 1082, where plaintiff's mule got out on the railway right of way through the defective fastening of a gate at a private farm crossing, this court said:

"In the present case the gate was a part of the railway company's fence which inclosed its road, and was erected and maintained by it as a part of such fence. If, therefore, by reason of the known defect in it the fastening of this gate would not hold the gate shut, the fence of which it was a part

was not a good and lawful fence and did not serve the purpose of preventing stock from passing upon the right of way and track." (p. 200.)

In *Railway Co. v. Kinman*, 9 Kan. App. 633, 58 Pac. 1037, which was also like the present case in some respects, it was held:

"When the evidence shows that a gate in the line of fence maintained by the railway company is too short to reach the post to which it is to be fastened and that the hook is lengthened by a piece of wire to make it reach to the staple, and there is nothing to prevent the wind from swinging the gate back and forth except the said hook, staple and wire, the jury are justified in finding said fastening insufficient." (Syl. ¶ 1.)

The statute itself relieves the plaintiff from the burden of showing that the railway company's negligence was the proximate cause of the damage. When plaintiff had shown his damage and had shown that the right-of-way gate was not up to the statutory standard his *prima facie* case was established. The statute reads:

"Every railroad company or corporation in this state, and every assignee or lessee of such company or corporation, shall be liable to pay the owner the full value of each and every animal killed, and all damages to each and every animal wounded by the engine or cars on such railway, or in any other manner whatever in operating such railway, irrespective of the fact as to whether such killing or wounding was caused by the negligence of such railway company or corporation, or the assignee or lessee thereof, or not." (R. S. 66-295.)

The next error urged by defendant pertains to the admission of testimony that a gate the bottom of which was twenty-six inches from the ground was not as secure as one twenty-four inches from the ground. We should think the opinion of an experienced farmer or cattleman would be helpful to a jury on a question of that sort, and that is the real test of the competency of evidence. (*Bushey v. Coffman*, 103 Kan. 209, 217, 173 Pac. 341. And see, *Healer v. Inkman*, 94 Kan. 594, 598, 599, 146 Pac. 1172; *Dannenberg v. Railway Co.*, 96 Kan. 708, 153 Pac. 504; *Todd v. Pipe Line Co.*, 108 Kan. 485, syl. ¶ 2, 196 Pac. 623.) So, too, was the testimony competent which tended to show the habits of milch cows to lie down by a pasture gate where they were accustomed to pass in and out at milking time once or twice a day, and how they usually lie down; and we see neither incompetency nor insufficiency to the testimony tending to show that a pasture gate which is too short to lap against the gatepost and which had to be fastened with a snap hook to a wire loop reaching out from the post to meet the gate is not a very secure way of fencing any inclosure for domestic animals. Certainly such a gate and fastening did not come up to the statutory requirement

of a lawful fence. The error based on this point cannot be sustained.

Defendant questions the propriety of the court's instructions. The trial court told the jury that the defendant was liable for the killing of plaintiff's cows irrespective of negligence unless the right of way was inclosed by a good and lawful fence, and if the right of way were thus inclosed the defendant would not be liable. Defendant says this instruction was a merely abstract and inapplicable ruling. We think not. Moreover, it closely paraphrased the pertinent statute. (R. S. 66-295, 66-299.) But it is argued that this instruction was in conflict with the general trend of the other instructions to the effect that defendant "was liable only upon the proof of negligence." Breach of statutory duty is a form of negligence. It was the only sort of negligence in issue in this case. After defining the defendant's duty in the matter of constructing and maintaining a certain minimum standard of fence, including adequate gates, the jury were plainly told that if the defendant were found to have complied with that duty it was not liable for the killing of the cows; and the only reference to negligence in the instructions was to this effect:

"XI. If you find from the evidence in this case that the defendant was negligent in any of the matters complained of in the petition with reference to the maintenance of the gate in question, and that by reason of such negligence plaintiff's cattle were killed, then you may find for the plaintiff," etc.

Proof of defendant's negligence in its ordinary sense was not a requisite to the establishment of plaintiff's cause of action, and it might have been better, and certainly simpler, to have raised no issue of negligence in this case. So far as the instructions are concerned, it would have been sufficient to have told the jury that if the fence and gate were as good as the statute requires, it was immaterial how the cows got out, for the railway company would not be liable; but if the gate and its fittings and fastenings were not up to the statutory standard, and the cows got out on the right of way through such defective gate and without the fault of the plaintiff, the defendant was liable no matter whether the cows burst the gate in a stampede, or lay down too close to it and raised it off a hinge and broke the fastening on getting up, or broke the gate in any other fashion. That was the law of this case reduced to its simplest terms; but certainly defendant has no just complaint of the way it was tried nor of the instructions given.

Defendant also complains of the amount of the verdict and judg-

ment and suggests that this court can take judicial notice that $70 or $80 per head would have been a top figure for plaintiff's cows. That would depend on their individual merit, and if we had the determination of that fact we might have rated them at the full value claimed by plaintiff. But since there was competent testimony to support the judgment, this court has no right to disturb it. (*Busley v. Busley,* 115 Kan. 725, 728, syl. ¶ 4, 224 Pac. 922.)

Defendant's final contention is that error was committed in awarding an attorney's fee, but in its argument it says: "Attorneys' fees are allowable only in actions brought under the act of 1874, chapter 94, carried into the Revision of 1923, 66-295 to 66-299." We need not stop to examine the accuracy of this assertion, for it was under this identical statute of 1874 that this action was brought and this fee allowed. (R. S. 66-299; *Dannenberg v. Railway Co.,* supra. And see *Baalmann v. Union Pac. Rld. Co.,* 118 Kan. 540, 542, 235 Pac. 1062.)

The judgment is affirmed.