Holloway v. Gano.

---

No. 27,774.

GEORGE HOLLOWAY, Receiver of the Fourth State Bank, *Appellant,* v. PAUL GANO, *Appellee.*

(262 Pac. 573.)

SYLLABUS BY THE COURT.

1. ALTERATION OF INSTRUMENTS—*Material Alteration—Intent and Motive Immaterial.* Such a material alteration of a note as will avoid the instrument and render it unenforceable need not be shown to have been fraudulently done, the intent and motive being immaterial as far as the rights evidenced by the note are concerned.

2. SAME — *Material Alteration — Action on Original Indebtedness — Evidence.* In a suit on a note where one of the defenses is material alteration by erasure it is permissible and proper in a case like this to go back with the pleadings and proof to the question of indebtedness, if any, and the evidence thereof by the original note of which the one in suit is a renewal.

3. BILLS AND NOTES — *Consideration — Accommodation Notes — Evidence.* Where one of the defenses in a suit on a note, and on the indebtedness evidenced by the original note of which the one in suit is a renewal, is want of

Alteration of Instruments, 2 C. J. pp. 1197 n. 8, 1198 n. 19, 1200 n. 39, 1201 n. 47, 1203 n. 62, 1214 n. 51, 1223 n. 25, 1228 n. 49, 1281 n. 58; 1 R. C. L. 996. Appeal and Error, 4 C. J. pp. 853 n. 59, 859 n. 7. Bills and Notes, 8 C. J. p. 1072 n. 85; 3 R. C. L. 1004.

consideration, and where it is admitted, as appears by the instructions, that all the notes were accommodation notes for which the maker received no actual value himself, further instructions should be given upon any theory of the accommodation which is supported by a substantial amount of the testimony.

4. SAME—*Accommodation Notes—Instructions.* No reversible error found in the giving or refusing to give certain instructions.

5. SAME—*Accommodation Notes—Evidence.* The evidence in the case considered and held, although conflicting, to be sufficient to support the verdict and judgment.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed January 7, 1928. Affirmed.

*E. T. Foote, C. M. Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the appellant.

*F. Dumont Smith, Eustace Smith* and *Arthur T. Symns,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This action has been here once before, then on an appeal from the sustaining of a demurrer to the evidence of the defendant. That ruling was reversed in *Holloway v. Gano,* 120 Kan. 256, 243 Pac. 317. It is now here on appeal by the plaintiff as receiver of the Fourth State Bank of Hutchinson, Kan., from a judgment rendered against him and in favor of the defendant, Paul Gano, in a suit on a note given by Gano to the bank February 18, 1923, for $10,000. The plaintiff, in his amended petition, based his action not only on the note but also upon the original indebtedness evidenced by the original note and the two succeeding notes, the subsequent ones being renewals in turn of the original. The defendant answered pleading material alteration of the note sued upon and a failure of consideration moving to the defendant. The reply alleged that the note was given for the accommodation of one Rust, a brother-in-law of Gano, and if given as alleged by defendant it was in violation of law and public policy and for the purpose of perpetrating a fraud upon the bank, its directors and stockholders, and the banking department, and the defendant was estopped on that account, and if any erasure was made it was without the knowledge or consent of the bank or its officers. The cause was tried to a jury, which made special findings and rendered a general verdict in favor of the defendant. The court, on motion of the

Holloway v. Gano.

plaintiff, set aside findings 2 and 7, and approved the others and the general verdict and rendered judgment for the defendant. A knowledge of the findings of the jury will be helpful in the consideration of the assignments of error. They are as follows:

"1. Did the defendant, Paul Gano, execute and deliver to the Fourth State Bank, of Hutchinson, Kan., on February 20, 1922, his note for $10,000, due six months after date, with interest at the rate of 10 per cent per annum? A. Yes.

"3. Did the defendant, Paul Gano, on the 23d day of August, 1922, execute and deliver his promissory note to the Fourth State Bank for the sum of $10,000, due in six months after date, with interest at 10 per cent per annum? A. Yes.

"4. If you answer the last interrogatory, No. 3, in the affirmative, then was said note given as a renewal of the note of February 20, 1922? A. Yes.

"5. Did the defendant, Paul Gano, execute and deliver to the Fourth State Bank, on February 18, 1923, his promissory note for $10,000, due six months after date, with interest at 10 per cent per annum? A. Yes.

"6. If you answer interrogatory No. 5 in the affirmative, then was said note given in renewal of the note of August 23, 1922? A. Yes.

"8. If you answer interrogatory No. 7 in the affirmative, was the purpose of said defendant, Paul Gano, in the execution and delivery of said note, to assist and enable Walter Grundy, president of the Fourth State Bank, to deceive the directors of said bank, and the banking department of the state of Kansas? A. No.

"9. At the time and execution of the delivery of said original note, of date February 20, 1922, for the sum of $10,000, did Paul Gano, the defendant, know and understand that said note was executed and delivered for the purpose of having the same placed in the bank as an asset, and for the purpose of deceiving the directors of said bank, and the banking department of the state of Kansas, as to the assets of said bank? A. No.

"10. Was the original note of date February 20, 1922, for $10,000, executed and delivered by the said Paul Gano to the Fourth State Bank, signed by Paul Gano alone? A. No.

"11. Was the note of August 23, 1922, for $10,000, executed and delivered by Paul Gano to the Fourth State Bank, signed by Paul Gano alone? A. No.

"12. Was the note of date February 18, 1923, for the sum of $10,000, executed and delivered by the defendant, Paul Gano, to the Fourth State Bank, signed at the time of its delivery by Paul Gano alone? A. No.

"13. Was the name Fred P. Rust signed to the note 'Exhibit 2' underneath the name of Paul Gano? A. Yes.

"14. If you answer the above question in the affirmative, was the signature of Fred P. Rust erased from said note without the knowledge or consent of the defendant, Paul Gano? A. Yes."

Appellant contends that the court erred in refusing to set aside the answer to question 9, especially when he did set aside the answer to question 7. We see quite a difference between these two ques-

tions: The seventh, Was the note executed and given for a certain purpose? The ninth, Did the defendant know and understand that it was executed and delivered for that purpose? If it had been executed and given for that purpose he might not have known it. It might have been concealed from him. On the other hand, if it had not been executed for such purpose, of course he would not have known it. Whether or not he knew and understood it was being done for a certain purpose was the important thing and one of the issues in the case. It would not avail the plaintiff anything if such was the purpose and the defendant did not know it.

Three points are urged with reference to the material alteration found by the jury and the instructions of the court concerning the alleged alteration. The answers to questions 10, 11 and 12 show that the jury believed the name of Fred P. Rust was erased from the note after it was delivered to the bank, without the knowledge or consent of the defendant. Appellant says it is not enough; that it was necessary to show when and by whom it was erased, and that it was done fraudulently. The court did not charge the jury that these features were necessary to a material alteration as contemplated by the statute. The language of the statute as to material alterations is as follows:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon it is avoided, except as against a party who has himself made, authorized or assented to the alteration and subsequent indorsers. . . . ." (R. S. 52-906.)

"Any alteration which changes: (1) The date; (2) the sum payable, either for principal or interest; (3) the time or place of payment; (4) the number or the relations of the parties; (5) the medium or currency in which payment is to be made, or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration." (R. S. 52-907.)

As to the time of the alteration it is said in 2 C. J. 1223 that it may not affect its validity unless made after the note has had its legal existence and inception. This is as found by the jury and is also in accord with the only evidence on the subject—that it was altered after it was delivered to the bank. It would be unreasonable to expect the maker to name the individual by whom or the day when such change was made. It is shown to have been done since delivery and it has been in the hands of the bank or the ones to whom the bank or its officers may have intrusted it ever since its delivery. There are numerous cases where the holder of the note

has shown that the alteration was made by mistake or by a third person, so as to avoid the effect of its being held to be a material alteration. The maker of the note, out of possession of the instrument after its delivery, is never expected to know who made the change. As to the necessity of there being a fraudulent intent, the court did not so instruct, and we think such instruction not necessary under the statute. Any of the material changes enumerated in the statute, without the consent of the maker, will avoid the instrument and render it unenforceable without regard to the motive or purpose. It is well said that this doctrine rests on the principle that parties are bound on their contracts only as made and entered into by them.

"The general rule is that any alteration which is material and made without the consent of the party sought to be charged thereon, at any time after its execution by him, renders it void as to them, even in the hands of an innocent holder." (3 R. C. L. 1004. See, also, 2 C. J. 1228.)

"It may be stated as the general rule that the intent or motive with which an alteration in an instrument was made is entirely immaterial, so far at least as the effect upon the instrument itself and upon the rights evidenced by it is concerned." (1 R. C. L. 996.)

The appellant here, as in the trial court, advocates the theory that even if the note upon which the action is based should be invalid because of material alterations, still the plaintiff might recover upon the original indebtedness evidenced by the original note and subsequent renewal notes, and the trial court seems to have adopted this theory. To this branch of the case, as presented in the amended petition, the defendant's answer is want of consideration. On this issue one of the instructions given by the court is particularly pertinent and gives us the exact attitude of the court and both parties during the trial of the case as to this issue. It is as follows:

"The jury are instructed that in determining the first defense above stated [want of consideration], it is admitted that the note in controversy and those of which it is a renewal were accommodation notes for which the defendant Gano received no actual value."

The court then proceeded to further instruct the jury as to the meaning of accommodation notes and gave separate instructions on the theory of plaintiff and that of defendant, the former if the jury should find the accommodation was for Rust, the brother-in-law, the latter if the jury should find the accommodation was for the bank. Serious objections are directed by the appellant to the giving of such instructions and the refusal of the court to give instruction

No. 1 requested by the appellant. Of course, the instruction requested did not present the alternate view, but the instructions given certainly contain all the essential points presented in the requested instruction. For this reason we can see no error in giving substantially the same instruction, or the substance of the same, in a different form. But that does not answer appellant's objection to the submission of the alternate theory, for which it contends there was no support in the evidence. We think there was certainly some evidence, and if there was any reasonable amount along that line it was the duty of the court to submit that feature or theory of the case contended for by the defendant as well as the other theory urged by the plaintiff. Only three witnesses testified as to the making and giving of the original note by Gano and the purposes and reasons for its being given. They were Gano, the defendant, Rust, the brother-in-law of the defendant, and Grundy, the president of the bank. Their evidence is conflicting; besides, it is possible that the jury may have discredited the testimony of some of them from the statements contained in the evidence itself. Was there sufficient evidence to justify the court in approving the general verdict on the question of the accommodation being for the bank rather than for Rust? The following is some of the evidence given by Rust and Gano on this particular subject, selected from the other testimony set out in the abstract:

Fred P. Rust:

"I became indebted to the Fourth State Bank after that time in the sum of $12,000. One note of $7,500 and one note of $5,000, which Mr. Paul Gano had signed with me. . . . Mr. Grundy explained to me that it would be a terrible loss to the bank to take at this time for the reason that they were a young bank, and that he would like for me to continue on with my clothing business, and he would loan me enough money to pay my creditors, if I could settle with the creditors, for a small amount, about 30 cents on the dollar. I had already made my arrangements for another location when I found myself insolvent. Mr. Grundy said if I could move to the corner of First and Main, he could arrange for money enough for fixtures and to settle with the creditors, provided I could settle with them for a small amount, and then I was to pay the bank what I owed them. I succeeded in settling with the creditors for 30 cents on the dollar. . . . I continued to do business with the Fourth State Bank. I made the settlement with my creditors in January or February, 1922. About the time I made the settlement with the creditors Mr. Grundy requested me to have Paul Gano sign another note. It was after he had made arrangements to settle with the creditors that he asked me to have Mr. Gano sign the note.

"Mr. Grundy told Mr. Gano what was the purpose of having him sign this note. He said 'I had borrowed more money up there than looked well for any one individual to borrow from a bank, and made the loan very top heavy, and it would aid the bank, it would look better for the bank, if I had somebody else's signature with me on part of the paper.'

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Prior to the signing of that note, what, if any thing, had Mr. Grundy said to you about it? Go ahead and tell what he said of why he wanted it. A. Well, I was indebted to the bank over $20,000, and as Grundy explained it to me, that was more than any one individual could borrow from any one bank under the supervision of the state bank examiner, and in order to make a flash or to get by the state bank examiner somebody had to be on part of that paper, and as a courtesy to the bank, and in order for them to get by the state bank examiner, we persuaded Paul to sign this note for $10,000. . . . It was merely an accommodation through the bank in order to get by the state bank examiner.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Well, did either you or Mr. Grundy in that conversation tell Mr. Gano that the purpose of his signing this note was to aid the bank in making a proper showing to the state bank examiner? A. That was the agreement, yes."

### Paul Gano:

"In February, 1922, I was requested to sign a $10,000 note to the Fourth State Bank by Mr. Grundy and Mr. Rust. . . . He said he had loaned Fred more money than he should, and it was top heavy, and he would like to get me on the note. I had three or four conversations with him about it.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. What did Mr. Grundy say, if anything else, that you recall at this time that he said to you about this as to the reason for getting you to sign the note? A. He just told me he had loaned Fred more money than he should, and he would like to have me go on his note with him."

The above, if believed, was sufficiently strong and substantial to support the verdict and judgment in favor of the defendant on the ground of want of consideration as defined and instructed by the court.

"A verdict and judgment, having the support of substantial and competent evidence which the jury chose to believe, cannot be disturbed on appeal." (*Roman v. St. Louis-S. F. Rly. Co.*, 120 Kan. 585, syl. ¶ 6, 245 Pac. 115.)

"Rule followed that a verdict and judgment on an issue of fact cannot be disturbed on appeal, when there is substantial evidence to support the judgment, although there is strong, persuasive evidence to the contrary." (*Vidich v. Benefit Association,* 108 Kan. 546, syl. ¶ 1, 196 Pac. 242.)

The testimony of Walter Grundy was for the most part directly opposite and to the effect that the original note was given by Gano to procure additional credit for his brother-in-law, Rust. Evidently

the jury gave more credence to the other two witnesses and did not recognize the records made in the bank books as being controlling or of great weight. It is not at all unreasonable for this accommodation to have been asked for and given to the bank. The bank was new and, as said by its president, could not well stand the loss of 70 per cent on the paper of Rust, occasioned by the bankruptcy proceedings. By the complicated deal it was reasonable to hope that the bank would ultimately collect the full 100 per cent, notwithstanding the bankruptcy proceedings. In this same connection it is significant to note that in support of the allegation of perpetrating a fraud upon the bank officers and banking department the witness Grundy seems to be the only one of the witnesses who gave expression to such purpose, and the jury specifically discredited it, as far as the defendant was concerned, in two of its answers and its general verdict. We think the evidence supported the verdict and judgment, and there was no error in the giving or refusing to give instructions.

The judgment is affirmed.