No. 32,196

ELRY WYANT, *Appellant*, v. JOHN RUSSELL and NORA RUSSELL, His Wife, *Appellees*.

(44 P. 2d 260)

Opinion filed May 4, 1935.

*C. L. Thompson,* of Hoxie, for the appellant.

*W. H. Clark,* of Hoxie, for the appellees.

The opinion of the court was delivered by

DAWSON, J. This was an action on a note secured by a chattel mortgage on certain live stock. The defense was based on fraudulent alteration of the instruments evidencing the defendants' obligation.

Briefly, the controlling facts were these: Wyant, the plaintiff, owned a farm which he rented to Russell, the defendant. To enable defendant to handle the farm plaintiff sold him a team of horses on time. He also sold defendant a half interest in certain cattle and hogs. The cattle and hogs were to be fed on the products of the farm, and some sort of division of sales and increase of this live stock was agreed upon but too obscurely disclosed in the record to be stated here.

In acknowledgment of defendants' indebtedness to plaintiff for the team of horses and the half interest in the other live stock, defendant and wife executed in favor of plaintiff their note for $400 and gave him a chattel mortgage on the personalty which had been the subject of the purchase and sale.

Default being made in payment of the note, plaintiff brought suit on it, and obtained possession of the mortgaged personal property by replevin. When the action was begun the note and mortgage appeared to be for $432.50, for which sum and interest plaintiff prayed judgment.

Defendants' answer alleged that the note and mortgage had been materially altered by plaintiff without their consent and denied all liability thereunder.

The principal issue joined had to do with the alteration of the instruments. Plaintiff's evidence tended to show that within a day or two after the note and mortgage were executed he called on defendants and directed their attention to an error in the computation of their indebtedness, and that the note and mortgage were altered with their consent. To substantiate plaintiff's version of the matter he produced a paper showing a computation which he avowed was made at the time and which tended to show that defendants' indebtedness was in fact $432.50. Unfortunately for plaintiff's cause, this computation was made on the back of a letter to plaintiff from the Rock Island railway company dated November 17, 1931, acknowledging plaintiff's inquiry of November 7 in relation to freight rates; but the note and mortgage sued on in this action were dated January 1, 1931, and the indebtedness evidenced by this note and mortgage likewise antedated the subject of plaintiff's correspondence with the railway company. Defendants' testimony was to the effect that no such incident as plaintiff testified to touching the alteration of the instruments ever occurred; so it was not remarkable that the jury should return a verdict for defendants, together with special findings reciting that when executed the note and mortgage were for $400, that plaintiff had altered them to $432.50, that neither of defendants had authorized such alterations, and—

"7. If you find that said note and mortgage were in fact changed after they were signed by the defendants, were the changes made with an understanding on the part of defendants that such change might be made for the purpose of correcting a mutual mistake in the amount intended to be named in the note and mortgage, exhibits 1 and 2? A. No.

"8. If you find that plaintiff changed the amount named in the note and mortgage, exhibits 1 and 2 of defendants' evidence, did plaintiff so change said amount for the purpose fraudulently of increasing the amount of the agreed settlement of plaintiff and defendants? A. Yes.

"9. What do you find was the value, at the time the property was taken under the writ of replevin, of the interest of defendants in that property? A. $253⁷⁵⁄₁₀₀."

At the time these special findings were made the jury's general verdict for defendants was for $253.75, which resulted in the following colloquy between court and jury:

"THE COURT: What did you find was the full value of the property taken

at the time it was replevined? Does the general verdict represent the full value you found the property to be, or the one-half of its value?

"FOREMAN: One-half.

.     .     .     .     .     .     .     .     .     .     .     .     .     .

"We just took one-half of what the sheriff valued it at when he took it.

.     .     .     .     .     .     .     .     .     .     .     .     .     .

"THE COURT: Was that the verdict of all of you, gentlemen?

"ALL JURORS: Yes, sir.

"THE COURT: The verdict required that you should find the full value and not the one-half. Clearly, by the further statements, you have intended to show that the general verdict is for only one-half. I will ask the reporter to take this verdict and copy it exactly as it was when it went to the jury, and I will ask you just here to correct that, if that was your intention, without going to the jury room."

Thereupon the jury altered its verdict to $507.50, and judgment was entered accordingly.

Plaintiff assigns various errors, the first of which is based on the court's first instruction, which stated among other matters that the action was to recover a money judgment on the note and mortgage. The pleadings are not submitted for our inspection; we cannot doubt that such was the purport of the pleadings; but in any event nothing prejudicial to plaintiff can be traced to the instruction complained of.

Error is also assigned on the third instruction, wherein the court stated the law touching the consequence which would follow if the jury found the note and mortgage had been fraudulently altered by plaintiff, and added: "In that event your verdict should be for the defendants for the return of the replevined property or its value when taken under the writ of replevin." The quoted excerpt will require attention later in this opinion; but the legal consequences which flow from a fraudulent alteration of a negotiable instrument which does not pass into innocent hands before maturity were correctly stated. (*Fraker v. Cullum,* 21 Kan. 555; *National Bank v. Hoover,* 114 Kan. 394, 400, 218 Pac. 1003; *Holloway v. Gano,* 120 Kan. 256, 243 Pac. 317; id., 125 Kan. 3, 6, 7, 262 Pac. 573; *Baron v. Lyman,* 136 Kan. 842, 852, 853, 18 P. 2d 137.) In *Hocknell v. Sheley,* 66 Kan. 357, 71 Pac. 839, it was said:

"The fraudulent alteration of a promissory note in a material respect destroys the note as a cause of action and will defeat a recovery on the original consideration, and if the note is secured by a mortgage such alteration operates to discharge the mortgage." (Syl.)

The only modification of the rule just quoted which has been made by the negotiable instruments act (R. S. 52-906) deals with the rights of an innocent holder, but those are not involved in this case. (*Bank v. Myrick,* 108 Kan. 191, syl. ¶ 3, 194 Pac. 648.)

Complaint is also made of the trial court's refusal to give an instruction touching the legal consequences which would ensue if plaintiff believed himself to be authorized to alter the note and mortgage. Such an instruction was properly refused. As a practical matter, a note fraudulently altered could never be defeated if the defense thereto could be overcome by the asseveration of its perpetrator that he believed himself authorized to make the alteration.

We come now to the only serious point in this case. The note and mortgage were intended to evidence defendants' debt for the purchase of the horses and for the purchase of a *half interest* in the cattle and hogs. While the trial court's understanding of the issues was rather hazy, the jury were not altogether at sea. Their first verdict sensed the fact that plaintiff did no civil wrong in repossessing himself of his own one-half interest in the live stock, however tortious or unauthorized the taking of the horses and defendants' half of the live stock might be. There was no justification for including in the judgment the full value of all the property taken by plaintiff under the writ of replevin. A considerable share of it belonged to him. All the facts necessary to a final and binding judgment between the parties were involved in the litigation. (*First Nat'l Bank v. Schruben,* 125 Kan. 417, 265 Pac. 53; *Clemens v. Kansas Gas & Electric Co.,* 131 Kan. 93, 97, 99, 289 Pac. 461.)

If the value of the horses and half the value of the live stock which belonged to the defendants had been separately itemized by the jury, this court could terminate this litigation by directing the proper judgment to be entered in defendants' behalf. Since that was not done, the cause will have to be remanded with instructions to set aside the judgment for $507.50, and to grant a new trial, limited, however (R. S. 60-3004; *Harris v. Drenning,* 101 Kan. 711, 719, and syl. ¶ 4, 168 Pac. 1106; *Carlgren v. Saindon,* 129 Kan. 475, 479, 480, and syl. ¶ 3, 283 Pac. 620), to an ascertainment of the value of the horses and also the value of defendants' one-half interest in the other live stock taken by plaintiff, and to enter judgment therefor in favor of defendants.

It is so ordered.