BURNS v. CROW.

(Supreme Court, Appellate Division, First Department. January 10, 1908.)

1. EVIDENCE—EXPERT TESTIMONY—FORM OF QUESTION.

An expert witness cannot be required to give an opinion based on conflicting evidence, and questions asking if, from the description as heard in court, the evidence as to which was conflicting, and from what the witness saw in relation to an opening in a scaffold, he would say the scaffold was a safe, proper, and secure one, are improper.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2366.]

2. SAME—OPINION EVIDENCE—CONCLUSIONS.

The questions were objectionable as calling for conclusions of the witnesses; for, though expert testimony is admissible to show the character and strength of the materials used, the proper manner of constructing them, and the weight they will sustain, the question whether the scaffold was safe was for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2309.]

3. MASTER AND SERVANT—ACTIONS FOR INJURIES—PLACE FOR WORK—EVIDENCE —SUBSEQUENT CHANGES.

In an action by a servant for injuries resulting from an insufficient platform and runway, evidence as to subsequent precautions taken to prevent similar accidents is inadmissible.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 918.]

Patterson, P. J., dissenting.

Appeal from Trial Term.

Action by Mary Burns, administratrix, against William L. Crow, for negligence resulting in the death of plaintiff's intestate. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

Frank V. Johnson, for appellant.
Edward J. Gavegan, for respondent.

McLAUGHLIN, J. Action to recover damages for death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant. Plaintiff had a recovery, from which defendant appeals.

The intestate, at the time of his death, was in the employ of the defendant, who was constructing a 12-story building, the framework of which was iron and the walls brick. The framework had been substantially completed and the walls had been carried to the floor of the twelfth story. The masons, in laying the bricks, stood upon scaffolding made of planks, which were, in the first instance, placed

upon iron beams and girders of the building; but, as the wall increas-
ed in height, a sufficient number of planks to make a platform was
taken from near the wall of the building and placed upon wooden
horses, and as each succeeding floor was reached the same method
was pursued. Whenever the scaffolds upon which the masons were
at work were at such height that the servants who carried the mortar
and brick could not reach them from the planks laid upon the floor
beams, a lower scaffold was made by placing planks upon smaller
horses, called "ponies," from which planks extended to the floor. The
brick and mortar were taken up in an elevator. At the time of the
accident the elevator only ran to the eleventh floor. The intestate was
engaged, with others, in carrying brick and mortar. Immediately pre-
ceding the accident he took a hod full of brick from the elevator, went
up on the run, stepped on the lower platform, turned around, and
dumped the brick onto the platform on which the masons were at
work. In doing so he in some way—just how does not appear—fell
from the lower platform, went into the open space immediately beneath
the platform on which the masons were at work, and received injuries
from which he died shortly thereafter.

It is not claimed that the platform or scaffolding was defective in
quality or construction. The sole contention is—and the case was
sent to the jury upon this theory—that the defendant was negligent,
if at all, in not covering the opening into which he fell. The de-
fendant contends that he was under no obligation to have this space
covered, that there was nothing in the nature of the work to indicate
that covering was necessary, and the fact that there was no covering
was obvious to the intestate, and he, having continued in defendant's
employ with knowledge of this fact, assumed the risk. I have reach-
ed the conclusion that the judgment must be reversed for errors com-
mitted at the trial, and, inasmuch as the evidence at the new trial
may be different from what it was at the one which resulted in the
judgment appealed from, it would serve no useful purpose to con-
sider or pass upon the contentions of the respective parties.

At the trial the witness Hunt, after he had testified that he had
built a great many scaffolds, was asked the following question:

"Q. Now, from the description of this scaffolding and opening that you
have heard here in court, and what you saw at the time, would you say that
that scaffolding was a safe, proper, and secure one?"

The question was objected to on various grounds, which were over-
ruled, and an exception taken, and the witness answered:

"No sir, it was not safe. To make it safe and proper and secure, I would
cover it in with planks—planks right in the opening before I put my scaffold."

A similar question was put to the witness McGlone, which was
also objected to, and the objection overruled, and an exception taken.
He stated that the scaffold was not safe. The questions were im-
proper in form and called for a conclusion of the witness. They
were improper in form, inasmuch as they required the witnesses to
draw inferences from conflicting testimony of other witnesses. Where
the facts are controverted, or are not entirely clear, a hypothetical
question may be put to a witness who is competent to testify, based

upon the facts claimed to have been established; but such witness cannot be required to give an opinion based upon conflicting evidence. Guiterman v. Liverpool Steamship Co., 83 N. Y. 358; Reynolds v. Robinson, 64 N. Y. 589.

The objections to the questions should also have been sustained because the answers called for conclusions of the witnesses; that is, whether the scaffold and run were safe. This was the very question which the jury had to pass upon. It was, in effect, permitting the witness to say to the jury that the plaintiff is entitled to recover. Dolan v. Herring-Hall-Marvin Safe Co., 105 App. Div. 366, 94 N. Y. Supp. 241. Testimony of this character has been many times condemned. Harley v. B. C. M. Co., 142 N. Y. 31, 36 N. E. 813; Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608. It is true expert testimony is admissible with reference to the character and strength of materials used in the construction of scaffolds; the proper manner in which to construct them, and the weight which they will sustain. Jenks v. Thompson, 179 N. Y. 20, 71 N. E. 266. This class of evidence is admitted for the purpose of laying before the jury all of the facts, to the end that they may determine whether a person has performed his duty in furnishing a reasonably safe place for his workmen; in other words, whether the scaffold is safe, in view of the weight put and the work performed upon it.

The witness Hunt was also permitted to testify, against the objection of defendant's counsel, that immediately following the accident the opening under the mason's platform was covered. This also necessitates a reversal of the judgment. Getty v. Town of Hamlin, 127 N. Y. 636, 27 N. E. 399. What occurred subsequent to the accident, or what precautions were taken to prevent similar accidents, could not be proved for the purpose of showing that the defendant's negligence was the cause of the intestate's death. Whether that were caused by defendant's negligence necessarily had to be determined from the facts as they existed at the time of the injury. Clapper v. Town of Waterford, 131 N. Y. 382, 30 N. E. 240.

The judgment and order appealed from must be reversed, and a new trial ordered, with costs to appellant to abide event.

HOUGHTON, SCOTT, and LAMBERT, JJ., concur. PATTERSON, P. J., dissents.