No. 27,074.

A. I. DARLING, *Appellee*, v. THE FRANKLIN FIRE INSURANCE COMPANY, OF PHILADELPHIA, PENNSYLVANIA, *Appellant*.

SYLLABUS BY THE COURT.

1. CYCLONE AND TORNADO INSURANCE—*Cause of Loss—Wind or Weight of Snow—Evidence—Opinion Evidence*. In an action to recover upon a policy insuring a building against loss caused directly by tornado, windstorm and cyclone, and providing that no liability should arise for a loss caused by snowstorm and where the principal question was whether the collapse of the building which had a roof that was nearly flat, was caused by wind or the weight of the snow thereon, witnesses should not be permitted to give their opinions as to whether the collapse and loss was caused by wind or snow since it was not the subject of expert testimony and the opinions were upon the ultimate fact which it was the province of the jury to determine.

2. SAME—*Cause of Loss—Evidence*. The witnesses whose opinions were received, although they had no special qualifications as experts, could testify as to the appearance of the building after it fell, the condition of the walls, the force of the wind before and at the time of the fall, and the quantity of snow thereon, and it became then a question for the jury to determine the efficient cause of the fall.

3. TRIAL—*Reception of Evidence—Waiver of Objections—Introduction of Rebutting Evidence*. Where erroneous testimony is admitted over the objection of defendant, the defendant does not waive the objection and error by thereafter offering rebutting testimony of a like kind.

Appeal from Jewell district court; WILLIAM R. MITCHELL, judge. Opinion filed February 12, 1927. Reversed.

*Robert Stone, George T. McDermott, Robert L. Webb, Beryl R. Johnson,* all of Topeka, *R. C. Postlethwaite, D. H. Postlethwaite, D. M. McCarthy* and *L. E. Weltmer,* all of Mankato, for the appellant.

*R. W. Turner, R. B. Turner, D. F. Stanley* and *J. R. White,* all of Mankato, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by A. I. Darling to recover from the Franklin Fire Insurance Company, upon a policy of insurance on a garage to an amount not exceeding $5,000. The loss insured against was that occurring directly by tornado, windstorm or cyclone. There was a stipulation in the policy that the company

Cyclone and Tornado Insurance, 17 C. J. p. 694 n. 12; L. R. A. 1915B, 1094; 4 A. L. R. 1293; 14 R. C. L. 1272. Evidence, 22 C. J. pp. 502 n. 8, 554 n. 81. Trial, 38 Cyc. p. 1398 n. 80 .

should not be liable for any loss or damage caused by hail, whether driven by wind or not, nor snowstorms. It appears that a heavy snowstorm visited Mankato, where the building was located, on March 16, 1924, and was accompanied by a strong wind. On the morning of the seventeenth the roof of the garage collapsed and the plaintiff made a claim for the amount of his policy. Payment was refused by the defendant on the ground that the loss was the result of a snowstorm, while the plaintiff contended that it was the result of the wind. The garage was a one-story brick building, with a frontage on the street of 60 feet which extended back 140 feet, and was situated between a brick building somewhat higher on the north and a building on the south with a gabled roof which extended about 60 feet towards the south. The north garage wall was 12 inches in thickness, the south wall was 8 inches in thickness, and the roof was supported by 60-foot wood girders or trusses extending from the north to the south walls, and were about 15 feet apart, the center of each truss rising about 8 feet higher than the ends. Boards were placed over the trusses and on these was laid a composition roof. In respect to the snow and wind, including the collapse of the roof, special findings of fact were made by the jury. By their general verdict the jury awarded the plaintiff $3,000 upon which judgment is rendered, and it is insisted that there was error in the admission of evidence, the instructions of the court, and in the rendition of judgment. There was conflicting evidence as to the velocity of the wind, the extent of the snowstorm and as to the quantity of snow which had accumulated upon the roof of the garage at the time of the collapse. Some witnesses for plaintiff stated that there was little snow on the roof, others that not more that three or four inches rested there, others that it amounted to no more than six or eight inches, and that the snow could have little effect on the falling of the roof. It was shown that the fire wall at the west end of the building extended about three feet above the edge of the roof, and about eight inches above at the east end. There was testimony that the south wall, which was only eight inches thick, had at some former time become defective and had leaned outwards but did not fall down. At that time the wall was pushed back by jack screws and pillars of brick constructed about eighteen feet apart on the inside of the wall with a view of strengthening it. In respect to the snow, some of these witnesses stated that it was the heaviest snowfall that had occurred in many years. Some photographs produced indicated the condition of the building shortly

after the roof fell and showed large quantities of snow on parts of the roof. An expert builder said he had calculated the weight which the trusses of the roof would support and found they had a carrying capacity of 290,000 pounds. That the weight of the roof, including the trusses, was 62,184 pounds, and that the estimated weight of freshly-fallen snow was six or seven pounds to the cubic foot. A witness for the defendant who was a government weather observer testified that the snowfall amounted to eighteen inches, and that the amount of water in the snow was the equivalent of 1.90 inches of the fall on Sunday, March 16, and .38 inch on the following day when the roof collapsed, making a total of 2.28 inches. This observation was made about ten miles north of Mankato, where the garage was situated. Another weather observer whose station was at Concordia, about forty-five miles away, took hourly measurements of the wind and in respect to the snow testified that it began to fall at 6:32 Sunday morning and continued until 2:15 a. m. on Monday. That he made a number of tests in different places and found that the total snowfall during the storm was 17.2 inches. Additional pictures of the fall of the roof and of the snow thereon were presented by the defendant showing a large quantity on the collapsed roof, and one witness said that at one place it appeared to be eight or ten feet deep. Others who had shoveled snow in order to reach their cars inside the garage, gave similar testimony as to the snow which was collected on the roof.

There was less conflict in the evidence as to the velocity of the wind. By some it was called a very strong wind, others said that on Sunday it was blowing at a rate of about forty miles an hour. Another that it was a hard wind on Sunday, but at 7:30 Monday morning it had abated and could not be called a windstorm at that time. Still another that it was a pretty hard wind and that on Monday morning the wind had died down, and was very light. One witness said it was blowing a severe gale, another that it was snowing hard and blowing hard at midnight, but was not blowing hard at the time of the collapse. The weather observer ten miles north of the garage, who kept a record on blanks furnished by the government as to weather conditions, stated that he had noted the existence of the snowstorm and as to the quantity that fell, but had no notations on his record of any unusual condition of the wind. Another witness estimated the velocity of the wind on Monday morning at from 15 to 18 miles per hour. The weather observer at Con-

cordia, 45 miles from the garage, testified that at one time on Sunday the velocity of the wind was 24 miles an hour, but that it abated about midnight and on Monday morning at 7 o'clock the velocity was 13 miles an hour. He made hourly observations which were recorded on an anemometer furnished by the government, and the reading showed only slight variation from 1 a. m. on Monday to 8 a. m. of that day, ranging from 7 to 15 miles an hour. He stated that the storm was general over north central Kansas, but he also said that weather conditions do vary between different localities. As already stated, the jury found that the highest velocity of the wind during the storm was 35 miles and that its velocity at the time the building collapsed was 20 miles. It was shown that the south wall of the garage fell outwards towards the south, while the west wall fell to the west. The trusses adhered to the north wall and the south ends fell and rested upon the cars stored within the garage.

Plaintiff contends that under the evidence the wind was shown to be the efficient cause of the loss, while the defendant insists that as the south wall was pushed outwards towards the south and the west wall to the west, and the further fact that the roof appeared to start falling from the center and moved westward like a wave of water, it demonstrated that the weight of the snow rather than the wind caused the collapse, citing as authority *Insurance Co. v. Nelson,* 64 Kan. 115, 67 Pac. 440. Defendant says that it being shown that the roof did not fall when the 35-mile wind was blowing, nor until the wind had abated to the velocity of 20 miles, seven hours later, shows that the snow was the efficient cause of the fall, and it asks if the south wall was pushed out by the wind before midnight, when the strong wind was blowing, what held up the ends of the trusses from that time until it fell at 7:30 the next morning.

Enough has been stated to show the conflict in the testimony and that it was a difficult and close question whether the wind or the weight of the snow was the efficient cause of the collapse. The policy insured against direct loss or damage by tornado, windstorm or cyclone, and provided that the defendant should not be liable for any loss or damage caused by snowstorms. As stated the jury found that the wind caused the collapse, but it also found that the weight of the snow contributed to the collapse. In view of the evidence and the findings certain testimony which was admitted over the objection of the defendant is deemed to be important. Plaintiff asked a number of witnesses whether in their opinion the collapse of

the building was caused by the wind or the weight of the snow, and they expressed their opinions to the effect that it was the wind. These witnesses were not in the vicinity of the building when the collapse occurred, nor were they shown to have any special qualifications for giving an opinion as to the cause of the collapse. Their opinions were given upon the real controversy in the case, the ultimate fact which it was the province of the jury to determine. It was a question to be determined from facts and not from opinions. There was no occasion for expert testimony, nor was it necessary to resort to opinion evidence. The witnesses could describe the character of the building, its appearance immediately after it fell, the condition of the walls, the quantity of snow thereon, the character of the wind before and at the time of the collapse, and from these facts so disclosed the jury could give an opinion as to the cause of the damage. That was in fact the essential inquiry in the case and the facts could be and were fully described and placed before the jury, and it then became the province of the jury to determine the issue. The situation was such that the facts could be detailed by witnesses so that jurors possessing knowledge and experience common to jurors in the ordinary affairs of life, were as competent, and may have been more competent, to draw inferences and determine questions than the witnesses who ventured opinions on the ultimate facts. The general rule in such cases as has been determined is that where there is no necessity to resort to opinion evidence, it is error to permit witnesses to give an opinion on the ultimate facts which it is the duty of the jury to determine. (*K. P. Rly. Co. v. Peavey,* 29 Kan. 169; *Murray v. Woodson County,* 58 Kan. 1, 48 Pac. 554; *Erb v. Popritz,* 59 Kan. 264, 52 Pac. 871; *Telephone Co. v. Vandevort,* 67 Kan. 269, 72 Pac. 771; *Oil Co. v. Drilling Co.,* 80 Kan. 261, 101 Pac. 1072; *Duncan v. Railway Co.,* 86 Kan. 112, 119 Pac. 356; *Healer v. Inkman,* 94 Kan. 594, 146 Pac. 1172.) *Davis v. Insurance Company,* 158 Cal. 766, was an action brought to recover upon a policy which insured against the fall of a building, except as the result of a fire, and it was held that a witness could not be permitted to give his opinion as to whether or not the building fell as the result of a fire. It was remarked that the question called for an opinion as to a fact which was not the subject of expert testimony. In view of the vital character of the fact involved and also as to the state of the evidence, we cannot hold that the error was without prejudice. The jury may have substituted

Darling v. Franklin Fire Ins. Co.

the opinions of the witnesses for their own or have based their own conclusions in whole or in part upon the opinions of the witnesses.

It is suggested by plaintiff that if there was error in the admission of the evidence, it was cured or waived by the fact that defendant subsequently offered evidence of a similar kind, and some cases of our own court are cited in support of the suggestion, which we think do not bear directly on the question involved.

Objections were made when the opinions of witnesses were offered and the court, after consideration, overruled them and made that ruling the law of the case. It was a definite and final ruling to which the defendant was required to submit. It was obliged to try the case upon the theory announced by the court and could not have the ruling reviewed until the trial ended and judgment was entered. The fact that defendant conformed to the ruling and offered testimony on the theory adopted by the court and which it was obliged to accept did not, we think, indicate a purpose to waive the error, nor did it increase the burden imposed on the plaintiff who had invoked the action of the court. In *Teter v. Spooner*, 279 Ill. 39, the matter of waiver was considered and it was held:

"After the court has overruled a defendant's objections to a certain class of evidence the defendant may introduce evidence of the same class to meet that of the plaintiff without waiving his right to urge his exceptions on appeal."

The supreme court of Nebraska on a similar question, ruled:

"We think plaintiff should not be charged with complicity in the error complained of; the immaterial and incompetent evidence had been received with the approval of the court, and plaintiff was not required to rely upon her exceptions but might reasonably proceed in accordance with the view of the trial court and offer evidence of a similar character to rebut the inferences which might be drawn from defendant's evidence without waiving the objection." (*Macke v. Wagener,* 106 Neb. 282, 288. See, also, *Panhandle & S. F. Ry. Co. v. Laird,* [Tex.] 224 S. W. 305; *Martin v. Commonwealth,* 126 Va. 715; *Stipel v. Piggott,* [Mo. App.] 269 S. W. 942; *Washington Va. Ry. Co. v. Deahl,* 126 Va. 141; *Walker Grain Co. v. Blair Elev. Co.* 254 Fed. 422; 38 Cyc. 1398.)

Some complaint is made of the refusal of requested instructions and also of some that were given, but we find no error in these rulings of which the defendant may justly complain. For the error committed in the admission of testimony the judgment is reversed and the cause remanded for a new trial.