No. 28,357.

GRANT BEAM, *Appellee*, v. THE FARMERS UNION MUTUAL HAIL INSURANCE COMPANY, *Appellant*.

(273 Pac. 440.)

Opinion filed January 12, 1929.

*C. W. Burch, B. I. Litowich* and *La Rue Royce,* all of Salina, for the appellant.

*Edgar Bennett* and *A. C. Bokelman,* both of Washington, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   Grant Beam brought this action to recover from the Farmers Union Mutual Hail Insurance Company, for a loss sustained to a corn crop by a hailstorm on September 15, 1926.   The jury returned a verdict for plaintiff in the sum of $115, with interest thereon from September 15, 1926.   The defendant appeals.

The errors assigned are the admission of opinion evidence, the refusal of the court to sustain a demurrer to plaintiff's evidence and to instruct a verdict for defendant, the overruling of a motion for a new trial and in the rendition of a judgment for plaintiff for damages and an attorney's fee.

The policy insured against loss by hail only, that in case of total loss of the crop the amount specified in the policy should be paid, and in case of a partial loss it should be paid in the proportion which the loss sustained bears to the total risk, but that in no case would any claim for a loss under five per cent be allowed, nor for any loss occurring after the crop had been harvested, nor if it was

not harvested in time. Only a partial loss was sustained by the plaintiff for which he asked $150. There is no dispute that a hailstorm had occurred, nor that some injury to the crop had been caused by hail. Shortly after the hailstorm several persons examined the field and found stalks of corn broken over, ears of corn lying on the ground and some of the ears washed into draws and beaten into the ground. There was testimony to the effect that corn might be broken down through the action of chinch bugs and that ears would be knocked off by wind and rain, and it appears that none of the witnesses undertook to testify that all of the stalks broken down and all the ears knocked off of the stalks was the result of the hailstorm. The insurance was limited to the loss occasioned by hail only, and defendant insists that plaintiff failed to prove the damage done by hail and further that the proof offered by him to establish his loss was not admissible. Plaintiff undertook to prove loss by expert testimony. He called witnesses who stated that they were farmers, had raised corn and witnessed the effect of hail upon a crop of corn, and further that they had made an examination of plaintiff's cornfield and then they gave their opinion as to the percentage of damage done. Plaintiff, who said he rode a horse through the field, was asked what in his opinion was the percentage of damage done by hail. Over the objection of the defendant that his opinion was not competent but was a question for the jury to decide, the evidence was admitted and in fact all of plaintiff's witnesses were thus qualified and were allowed to testify that in their opinions the damage done was from twenty to twenty-five per cent of the crop. Besides these opinions the witnesses stated that they saw ears of corn on the ground, stalks broken down, corn washed into the draws, which in some cases was covered by mud. Some of them said that the stalks might be broken down by wind accompanied by rain and might have been broken down as a result of being weakened by chinch bugs. They said they saw evidence of wind and bugs in the field, but as to how much was so affected they did not undertake to state, nor did they testify to the comparative loss resulting directly from any one of the causes, nor from hail alone. In their opinions they gave the amount of the loss or damage suffered instead of stating the facts and circumstances as to the condition of the corn resulting from hail and thus let the jury, whose function it was, assess the amount of damages. The questions were the equivalent

of asking the witnesses how much damage was done, the ultimate fact which the jury were called to decide. The damage sustained was the real point in controversy and should have been determined by the jury from facts shown, and not from opinions giving the lump sum of the loss sustained. Testimony might have been given as to the condition of the corn, the proportion of the ears knocked off by hail, the quantity of that knocked off that was rendered valueless. As part of the corn was practically mature some of that on the ground could have been saved and was at least not entirely without value, and it could have been shown about how much of it could have been saved. The witnesses from their examination could have given a fair estimate of how much of the stalks were blown down by wind and how much corn was knocked off by hail, and how much, if any, had fallen over as the result of being infected with chinch bugs. It is argued that the witnesses qualified as experts and were therefore competent to give opinions, but if it were granted that the matter was the subject of expert evidence the answer to the questions was still one within the province of the jury, and witnesses although experts could not assume the functions of the jury and give their opinions. (*Murray v. Woodson County*, 58 Kan. 1, 48 Pac. 554.) In *Sherman Center Town Co. v. Leonard*, 46 Kan. 354, 26 Pac. 717, evidence was admitted as to the loss sustained by the failure of a party to move a hotel building from one town to another, in compliance with a contract. After showing that the town where the hotel stood had been depopulated so that there were no guests or business at that place, also that the town people had moved over to another town where there was patronage and business to be had, and as to the cost of moving the hotel the witnesses were asked what damage was sustained by the failure to move the hotel and the answer was that the damage was $150 per month, besides the cost of moving the building. In reversing the case it was said:

"The questions asked were objectionable, and the testimony given was inadmissible upon two grounds: First, the questions were objectionable because they did not call for specific facts, but permitted the witnesses to state a mere opinion, giving in the lump the amount of damages thought to be sustained. It is the function of the court or jury trying the case to determine from evidence properly presented what the amount of damages sustained is, and while it might be very convenient for the plaintiff to permit him and his witnesses to give the damages suffered in a lump, it would be a very unsafe practice to allow them to state the amount of damages supposed to be

sustained, without regard to the facts or knowledge upon which their opinions were based. It is well settled that the practice is not permissible." (p. 357.)

. In an action upon a policy insuring property against loss caused directly by tornado, windstorm or cyclone, with a provision that it did not cover loss by snowstorm, and where the principal question in the case was whether the collapse of a building was caused by wind or the weight of snow thereon, witnesses were asked and allowed to answer and give opinions to the effect that the collapse of the building was caused by wind and not by the weight of snow. It was held that the question related to the essential inquiry in the case, that it was error to permit the opinions to be given by the witnesses, that the facts as to the condition of the building before and after the storm, the force of the wind at the time, the quantity of snow which fell thereon could have been shown, and that the issue should have been left to the determination of the jury, citing a number of authorities. (*Darling v. Franklin Fire Ins. Co.*, 122 Kan. 620, 253 Pac. 245. See, also, *W. & W. Rld. Co. v. Kuhn*, 38 Kan. 675, 17 Pac. 322; *C. K. & N. Rly. Co. v. Neiman*, 45 Kan. 533, 26 Pac. 22; *Upcher v. Oberlender*, 50 Kan. 315, 31 Pac. 1080; *Telephone Co. v. Vandevort*, 67 Kan. 269, 72 Pac. 771; *Oil Co. v. Drilling Co.*, 80 Kan. 261, 101 Pac. 1072.) That the evidence could have been produced to show the extent of the loss due to hail was demonstrated by that offered by the defendant, of farmers and other witnesses who went through the fields after the storm and saw the evidence of hail and its effect. In the examination made by them they observed marks of hail, one of them stating that he found that one ear out of fifty showed hail spots. Some of them stated that part of the corn, about one-half, was mature and that in some places the sunflowers and weeds in the field were still green, and they testified that hail effects were seen on these and on some of the corn that was green. They also testified that ears of ripe corn would be knocked off by the wind, that there had been a heavy rain before the hailstorm which had washed ears of corn into a draw, but that the corn found in the draws was sprouted, showing that it had washed there before the hailstorm, since it could not have sprouted between the time of the hailstorm and that of their examination. A witness stated that in making a test he selected one hundred stalks in different parts of the field, and made a count of the injured corn in each selection. Where he found marks of hail he stripped the ears

and thus learned whether the corn had been injured, and he stated the result of his examination. He also said he found stalks that were bent over, not broken off, which showed that the bending was caused by·chinch bugs, and that many ears on the ground did not show marks of hail. Another witness stated that he examined about forty or fifty rows of corn in different parts of the field and found a stated number of ears affected. Some ears were found on the ground, he said, which were dry, and he found corn washed into the draw, but whether it had been knocked off by wind or hail he could not state. He also said that he noticed chinch bugs in one of the fields.

It is apparent that the extent of the loss may be shown by witnesses who have examined the fields and made a count of injured stalks in each part where conditions differ and thus give the jury a basis for determining the extent of the damage done, upon facts rather than upon the opinions of witnesses. It may be noted that some of the questions asked for the extent of the loss did not even confine it to that caused by hail, although the evidence shows that some of the injured corn and losses resulted from causes other than hail. While part of the loss was occasioned by hail we cannot hold that the inadmissible testimony, relating as it did to a vital issue in the case, was without prejudice. While defendant filed a demurrer to plaintiff's evidence and also asked for an instructed verdict in favor of the defendant, at the end of the trial, both of which were refused, we think it is manifest from the record that defendant was not entitled to have either sustained.

Plaintiff suggests that defendant is not entitled to a review of the case because counsel did not appear and orally present the motion for a new trial at a time set for its consideration. A motion was filed which covered the grounds assigned as errors. These grounds, it appears, had been twice argued before the court and authorities cited when rulings were made. It is, of course, the duty of counsel to assist the court by clearly stating objections to rulings for which a new trial is asked (*Riverside v. Bailey*, 82 Kan. 429,·108 Pac. 796), but the errors had been sharply and persistently pressed upon the court with arguments and authorities so that it was in full possession of the points and, as counsel says, it was possessed of all the aid which he could give. The fact that counsel did not repeat in an oral argument on a motion for a new trial grounds which had been

previously and fully presented does not warrant the overlooking of the grounds of alleged error nor the denial of a review of the assignments of error.

For the errors pointed out the judgment is reversed and the cause remanded for a new trial.

BURCH, J., not sitting.