No. 29,628.

Jouett Shouse, Dudley Doolittle and Phil D. Morelock, *Appellants*, v. The Consolidated Flour Mills Company, *Appellee*.

(294 Pac. 657.)

Opinion filed January 10, 1931.

*C. M. Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the appellants.

*Claude E. Chalfant,* of Hutchinson, *Edward F. Colladay* and *Joseph C. McGarraghy,* both of Washington, D. C., for the appellee.

The opinion of the court was delivered by

DAWSON, J.: As this is the second appearance of this cause in this court (128 Kan. 174, 277 Pac. 54) it will suffice to say that it was an action to recover on *quantum meruit* for services performed by plaintiffs as attorneys in behalf of defendant before the income tax unit of the Bureau of Internal Revenue.

The defense was that plaintiffs' services were of no value; and in a cross petition it was alleged that plaintiffs made such a meager, unsound and insufficient presentation of the law and facts pertaining to the tax liabilities of defendant and its constituent corporations, and handled defendant's matters intrusted to them in such a negligent and unskillful manner that defendant was damaged in various sums aggregating $25,791.88, for which amount defendant prayed judgment.

Jury trial, general verdict for defendant, judgment accordingly, appeal.

The principal error complained of relates to the admission of opinion evidence given on defendant's behalf to prove that plaintiffs' services were of no value:

Witness Hanley, of Chicago, income tax counsel, whose qualifications as an expert were admitted, testified:

"Q. Mr. Hanley, have you been present in court throughout the trial of this case? A. I have been. I have heard all the testimony.

"Q. Based upon the testimony you have heard in this case, have you formed an opinion as to the value of the plaintiffs' services?

"BY THE PLAINTIFF: To which we object as incompetent, irrelevant and immaterial; not the proper basis for the forming of a conclusion and opinion. Our supreme court has held that that kind of a question must be based upon a hypothetical question.

"BY THE COURT: Overruled; exception allowed.

"Q. Have you formed an opinion, based upon the testimony you have heard in this trial? A. I have.

"Q. You may state what that is. A. My opinion is that the services rendered are of no value to the Consolidated Flour Mills Company."

Witness Wallace, of Washington, D. C., expert income tax attorney, testified:

"Q. Mr. Wallace, you have been present in court throughout the trial of this case? A. I have.

"Q. And you have heard all the testimony introduced in the trial? A. I have.

"Q. Based upon the testimony you have heard in this case, have you formed an opinion as to the value of the plaintiffs' services? A. Yes, sir; I have.

"Q. You may state it.

"By THE PLAINTIFF: Same objection.

"By THE COURT: Overruled; exception allowed.

"A. Considered as a whole, the services rendered by the plaintiffs in this case have been without value."

Witness Lewis, of California, attorney and former counsel for defendant, testified:

"Q. Mr. Lewis, have you been present throughout the trial of this case? A. Yes, sir.

"Q. And heard all the testimony in the case? A. All of it except a little portion of it yesterday morning. I was about ten or fifteen minutes late.

"Q. Based upon the evidence you have heard, have you formed an opinion as to the value of the plaintiffs' services rendered in this case?

"By PLAINTIFF: We object to the question for the same reason.

"By THE COURT: Overruled; exception allowed.

"A. Yes, sir.

"Q. You may state it. A. I consider them of no value to the defendant company, the Consolidated Flour Mills Company."

Witness Colladay, of Washington, D. C., lawyer of thirty years' practice before federal courts and governmental departments, testified:

"Mr. Colladay, you have been present in court through the trial of this case? A. I have.

"Q. You have heard all the testimony introduced in evidence in this case? A. I have.

"Q. Based on your experience and qualifications and your practice before the Internal Revenue Department, I will ask you if you have a judgment as to whether or not the procedure followed by the plaintiffs in this case was a proper procedure in the presentation of these claims in the income tax unit of the Bureau of Internal Revenue?

"By PLAINTIFF: We object to that, the procedure not having been sufficiently and thoroughly gone into. We object for the further reason that there is not sufficient evidence, Mr. Colladay hasn't heard sufficient evidence in court to know whether or not; or to be able to form an opinion whether or not the procedure was proper.

"By THE COURT: Overruled; exception allowed.

"Q. Have you reached such a judgment, Mr. Colladay? A. I have.

"Q. You may state it. A. My judgment is that the procedure pursued by the former counsel in the case, Messrs. Shouse, Doolittle and Morelock, was not proper.

"Q. Mr. Colladay, based upon the testimony you have heard in this case,

have you formed an opinion as to the value of the services rendered by the plaintiffs in this case?

"BY PLAINTIFF: We object to this question for the same reason.

"BY THE COURT: Overruled; exception allowed.

"A. I have.

"Q. You may state it. A. Taking the whole history of the case, considering all the services together and what I consider the errors made by the former counsel, I consider their services of no value to the Consolidated Flour Mills Company."

Counsel for plaintiffs complain that these questions touching the value of plaintiffs' services were highly improper and that the answers thereto were prejudicial, that the questions invited the witnesses to weigh and consider all the evidence pro and con adduced at the trial, and to give an advisory verdict thereon which the jury might confidently adopt as its own. In the early case of *Tefft v. Wilcox*, 6 Kan. 46, 54-55, which was an action for damages against a physician and surgeon for alleged failure to use due and proper care, skill and diligence in treating plaintiff's disabled arm and shoulder, a similar method of getting the opinion of a witness touching the amount of damages sustained by plaintiff was condemned. The question and answer read:

"What damage have you sustained in consequence of the loss of your right arm and shoulder?

"My answer is, the amount claimed in my petition, fully ten thousand dollars." (p. 54.)

On appeal from a judgment for plaintiff this court said:

"Then, as to the question asked. It was in no view of the case a proper one. It was calculated to elicit no facts which would assist the jury in determining for themselves as to the question of damages, but left the whole matter to the mere opinion of the witnesses. It was a question resting upon and including a large number of facts, as is evident from the multifarious proof which was submitted, and the number of witnesses who were called and testified at the trial; and it was *such facts themselves* that the defendant was entitled to have the jury pass upon, and that, too, uninfluenced by any opinion of any witness testifying in the relation in which this witness appeared. But such right was taken away by the authority of the court in permitting the course of inquiry which was pursued in this instance, and it seems clear that such a ruling ought not to be sustained. But this matter is placed beyond a doubt when the answer of the witness comes to be considered in the light of the authorities. . . . There are exceptions to the rule, as thus expressed, having reference to questions of science, trade, and to those of a similar nature. But the question and answer, and the matter to which the inquiry was directed in this instance, do not come within any of such exceptions; and hence the general rule must be held to govern." (pp. 54, 55.)

In *Healer v. Inkman,* 94 Kan. 594, 146 Pac. 1172, both phases of the rule touching the use of expert opinion evidence were stated and applied. Two sections of the syllabus read:

"Hypothetical questions propounded to expert witnesses tending to show the length of time which ordinarily would be required to do a certain piece of work and to show the proper manner of doing it are admissible in evidence where such evidence would aid the jury in finding the ultimate facts necessary to their verdict.

"The rule followed that expert testimony is inadmissible to prove the ultimate facts which the jury itself must determine." (Syl. ¶¶ 3, 7.)

(See, also, *Beam v. Farmers Union Mutual Hail Ins. Co.,* 127 Kan. 234, 273 Pac. 440.)

In *Burns v. Crow,* 123 App. Div. 251, 107 N. Y. Supp. 944, which was an action for the death of a workman who fell through an opening in the scaffold of a building under construction, it was held to be reversible error to admit testimony of a witness as to the safety and security of the scaffold based on "the description of this scaffold and opening that you have heard here in court and what you saw at the time." The court said that the form of the question was improper because it required the witness to draw inferences from the conflicting testimony of other witnesses, and also because it called for a conclusion.

"Where the facts are controverted or are not entirely clear, a hypothetical question may be put to a witness who is competent to testify, based upon the facts claimed to have been established, but such witness cannot be required to give an opinion based upon conflicting evidence. . . .

"The objections to the questions should also have been sustained because the answers called for conclusions of the witnesses; that is, whether the scaffold and run were safe. This was the very question which the jury had to pass upon. It was, in effect, permitting the witness to say to the jury that the plaintiff is entitled to recover. . . . Testimony of this character has been many times condemned." (p. 253.)

In *Wissinger v. Valley Smokeless C. Co.,* 271 Pa. 566, error was assigned on a ruling of the trial court striking out the testimony of an expert witness on the subject of land values. It was brought out on cross-examination that in giving his opinion he had taken into consideration the "items testified to in the case [by other witnesses] along with [his own] experience in the real-estate business." (p. 570.) The supreme court held that the testimony was properly stricken. The court said:

"Assuming he was properly qualified as an expert, his opinion, based on

the testimony of other witnesses, would, under the circumstances of this case, be inadmissible. Where facts are admitted or proven by evidence which is not conflicting, an expert may give his opinion founded on that testimony (*Gillman v. Ry.*, 224 Pa. 267), but, where there is a conflict, he must base his opinion on facts within his knowledge or on an assumed state of facts or on the testimony given in behalf of one of the parties and made known to him and which, for the purpose of his opinion, he assumes to be true: *Gillman v. Ry.*, supra; *McDyer v. Rys. Co.*, 227 Pa. 641. To permit him to base his opinion on contradictory evidence, or on the whole case as adduced by both plaintiff and defendant, would permit him to usurp the functions of the jury and determine the case on its facts." (p. 570.)

The textbooks and encyclopedias are in accord with the decisions just cited. (1 Wigmore on Evidence, 2d ed., 1085 *et seq.*; 5 Ency. of Evidence, 618; 22 C. J. 718-720.)

In this case the proper method of eliciting the opinions of the expert witnesses as to the value of plaintiff's services would have been to have formulated a hypothetical question which would have included a synopsis of the undisputed facts and a summary of whatever testimony or other evidence was adduced for the truth of which the questioner stood sponsor, and to ask each expert witness to assume as true the facts thus outlined and to give his opinion thereon.

Defendant cites some of our own cases where—according to the view of counsel—the rule just discussed was not applied: The first of these was in the personal-injury case of *A. T. & S. F. Rld. Co. v. Frazier*, 27 Kan. 463, where a physician was permitted to give his opinion based upon a personal examination of the injured party as well as upon statements made by the party himself as to his condition, feelings and pains. That case is not in point.

In the case of *A. T. & S. F. Rld. Co. v. Brassfield*, 51 Kan. 167, 32 Pac. 814, a physician who had heard the injured plaintiff testify how the injury was caused was permitted to testify that in his opinion the plaintiff's injury could have occurred in the manner stated. This court held that the departure from the hypothetical form of questioning an expert witness was not prejudicial, as the testimony was very brief and neither obscure nor involved. Another excellent reason for the ruling would have been that the expert was not asked to weigh evidence pro and con touching the fact or extent of plaintiff's injuries. This citation does not avail the defendant.

Neither does the similar case of *George v. Shannon*, 92 Kan. 801, 804, 142 Pac. 967, justify the method of eliciting the opinions of

experts allowed in the case at bar. In that case the physician gave his opinion upon his personal examination and upon *undisputed* evidence.

In *Mampe v. Kunkel,* 95 Kan. 602, 148 Pac. 741, an architect who had heard a description of work done by another architect in supervising certain building construction, and who had seen the building itself, was permitted to give his opinion of the value of the plaintiff architect's services. But there again the expert witness did not have to weigh disputed facts. Manifestly he gave his opinion upon the facts testified to by plaintiff and upon his own observation of the construction work which had required supervision.

Plaintiffs also quote an excerpt from the early case of *State v. Medlicott,* 9 Kan. 257, but a careful examination of the context and of Chief Justice Kingman's opinion in full makes it clear that it is not an authority for the admission of the testimony objected to, but rather to the contrary.

The suggestion is made that there were no disputed facts in this case. We cannot assent to that. The substance of plaintiffs' evidence, if the jury saw fit to believe it, was that they had rendered good, arduous service for three or four years in defendant's behalf, and had expended some $3,000 of their own money in the course of it. The evidence for the defendant was quite to the contrary. And this suggests another objection to the answers of some of defendant's expert witnesses, where they testified that plaintiffs' services were worth nothing *to the defendant.* Where a lawyer's services are engaged by a client and those services are performed with diligence, skill and probity, the fact that his services turn out to be unsuccessful—that his client is defeated in the litigation—is no reason why the lawyer should not be paid a reasonable compensation; and if he is employed for a stipulated fee but his services are terminated before the conclusion of the litigation he is entitled *quantum meruit* to just compensation nevertheless. (*Clark v. Pratt,* 116 Kan. 33, 225 Pac. 1063.) Of course, if, through negligence or want of reasonable professional skill or through sheer disregard of his clients' wishes or interests, the attorney's services are of no benefit to his client, or actually to his client's disadvantage, he is not entitled to any compensation and may have to respond in damages to boot.

In *Babbitt v. Bumpus,* 73 Mich. 331, 16 A. S. R. 585, 588, 589,

which was an action to recover for the value of a lawyer's services performed in behalf of a client, it was said:

"A lawyer is not an insurer of the result in a case in which he is employed, unless he makes a special contract to that effect and for that purpose. Neither is there any implied contract, when he is employed in a case, or any matter of legal business, that he will bring to bear learning, skill, or ability beyond that of the average of his profession. Nor can more than ordinary care and diligence be required of him, without a special contract is made requiring it. Any other rule would subject his rights to be controlled by the vagaries and imaginations of witnesses and jurors, and not infrequently to the errors committed by courts. This the law never has done; and the fact that the best lawyers in the country find themselves mistaken as to what the law is, and are constantly differing as to the application of the law to a given state of facts, and even the ablest jurists find themselves frequently differing as to both, shows both the fallacy and danger of any other doctrine; and especially is this so as to questions of practice, the construction of statutes, and particularly those arising under our criminal and probate laws. Frequently we find the decisions of courts of last resort in the different states directly opposed to each other upon the same questions, and resting upon the same state of facts. These all admonish courts and jurors that great care and consideration should be given to questions involving the proper service to be rendered by attorneys when they have acted in good faith, and with a fair degree of intelligence, in the discharge of their duties when employed under the usual implied contract. Under such circumstances, the errors which may be made by them must be very gross before the attorney can be held responsible. They should be such as to render wholly improbable a disagreement among good lawyers as to the character of the services required to be performed, and as to the manner of their performance under all the circumstances in the given case, before such responsibility attaches." (p. 337.)

(See, also, *Wigton v. Donnelly*, 122 Kan. 796, 253 Pac. 400; 6 C. J. 722; 2 R. C. L. 1012-1016, 1062.)

Plaintiffs also complain of the submission to the jury of three forms of verdict, but under the issues and evidence any one of three verdicts might have been rendered by the jury—one, awarding a verdict in some amount to plaintiffs; another, awarding some amount to defendant on its cross petition; or a third, finding generally for defendant, which would simply indicate that the jury had concluded that plaintiffs did not establish their cause of action by a preponderance of the evidence against defendant's evidence to the contrary, and that neither had the defendant established its cross action for any particular sum against plaintiffs' evidence to the contrary.

Because there have been two trials of this case and this is the

second appeal, and because it has been burdensome and expensive to the parties concerned, this court is reluctant to disturb the judgment under present review; but in view of the erroneous and prejudicial admission of the opinion testimony quoted above, the duty of this court is plain. The judgment of the district court is reversed and the cause is remanded for a new trial.